[No. A095040. First Dist., Div. Two. Apr. 9, 2002.]

EARL SMITH, Plaintiff and Respondent, v.
SANTA ROSA POLICE DEPARTMENT, Defendant and Appellant.

COUNSEL

Mark T. Clausen for Defendants and Appellants.

Rene Auguste Chouteau and Brien J. Farrell, City Attorneys, and Matthew J. LeBlanc, Assistant City Attorney, for Plaintiff and Respondent.

OPINION

KLINE, P. J.—

## INTRODUCTION

Vehicle Code section 14602.6 provides for the removal, seizure and impounding for 30 days of a vehicle driven by a driver while unlicensed or

while his or her driving privileges are suspended or revoked. (Veh. Code, § 14602., subd. (a).)[1] Following notice by the impounding agency, "[t]he registered and legal owner of a vehicle that is removed and seized . . . shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage . . . ." (§ 14602.6, subd. (b).)[2]

In this appeal from a peremptory writ of mandate issued by the Sonoma County Superior Court, we determine whether the registered owner's lack of

---

[1] All statutory references are to the Vehicle Code, unless otherwise indicated.

[2] At all relevant times, former section 14602.6 provided in its entirety:

"(a) Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked or without ever having been issued a license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle, without the necessity of arresting the person in accordance with Chapter 10 (commencing with Section 22650) of Division 11. A vehicle so impounded shall be impounded for 30 days.

"The impounding agency, within two working days of impoundment, shall send a notice by certified mail, return receipt requested, to the legal owner of the vehicle, at the address obtained from the department, informing the owner that the vehicle has been impounded. Failure to notify the legal owner within two working days shall prohibit the impounding agency from charging for more than 15 days' impound when the legal owner redeems the impounded vehicle.

"(b) The registered and legal owner of a vehicle that is removed and seized under subdivision (a) or their agents shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage, in accordance with Section 22852.

"(c) Any period in which a vehicle is subjected to storage under this section shall be included as part of the period of impoundment ordered by the court under subdivision (a) of Section 14602.5.

"(d)(1) An impounding agency shall release a vehicle to the registered owner or his or her agent prior to the end of 30 days' impoundment under any of the following circumstances:

"(A) When the vehicle is a stolen vehicle.

"(B) When the vehicle is subject to bailment and is driven by an unlicensed employee of a business establishment, including a parking service or repair garage.

"(C) When the license of the driver was suspended or revoked for an offense other than those included in Article 2 (commencing with Section 13200) of Chapter 2 of Division 6 or Article 3 (commencing with Section 13350) of Chapter 2 of Division 6.

"(2) No vehicle shall be released pursuant to this subdivision, except upon presentation of the registered owner's or agent's currently valid driver's license to operate the vehicle and proof of current vehicle registration, or upon order of a court.

"(e) The registered owner or his or her agent is responsible for all towing and storage charges related to the impoundment, and any administrative charges authorized under Section 22850.5.

"(f) A vehicle removed and seized under subdivision (a) shall be released to the legal owner of the vehicle or the legal owner's agent prior to the end of 30 days' impoundment if all of the following conditions are met:

"(1) The legal owner is a motor vehicle dealer, bank, credit union, acceptance corporation, or other licensed financial institution legally operating in this state or is another person, not the registered owner, holding a security interest in the vehicle.

actual knowledge that the driver to whom he loaned his car was not validly licensed constitutes a mitigating circumstance under section 14602.6, subdivision (b), warranting release of the vehicle to the registered owner before expiration of the 30-day storage period set forth in the statute. We conclude, as did that trial court, that it does. We further conclude that section 14602.6 does not condition the operation of the mitigating circumstances exception to situations where the owner has made a reasonable inquiry as to the licensed status of the driver before lending the vehicle.

## FACTS AND PROCEDURAL BACKGROUND

On July 1, 2000, Santa Rosa Police Officer Robert T. Minning stopped a 1985 Dodge pickup truck being driven by Adam Pennebaker, for failing to

---

"(2) The legal owner or the legal owner's agent pays all towing and storage fees related to the seizure of the vehicle. No lien sale processing fees shall be charged to the legal owner who redeems the vehicle prior to the fifteenth day of impoundment.

"(3) The legal owner or the legal owner's agent presents foreclosure documents or an affidavit of repossession for the vehicle. The foreclosure documents or affidavit of repossession may be originals, photocopies, or facsimile copies, or may be transmitted electronically.

"(g)(1) A legal owner or the legal owner's agent that obtains release of the vehicle pursuant to subdivision (f) shall not release the vehicle to the registered owner of the vehicle or any agents of the registered owner, unless the registered owner is a rental car agency, until after the termination of the 30-day impoundment period.

"(2) The legal owner or the legal owner's agent shall not relinquish the vehicle to the registered owner until the registered owner or that owner's agent presents his or her valid driver's license or valid temporary driver's license to the legal owner or the legal owner's agent. The legal owner or the legal owner's agent shall make every reasonable effort to ensure that the license presented is valid.

"(3) Prior to relinquishing the vehicle, the legal owner may require the registered owner to pay all towing and storage charges related to the impoundment and any administrative charges authorized under Section 22850.5 that were incurred by the legal owner in connection with obtaining custody of the vehicle.

"(h)(1) A vehicle removed and seized under subdivision (a) shall be released to a rental car agency prior to the end of 30 days' impoundment if the agency is either the legal owner or registered owner of the vehicle and the agency pays all towing and storage fees related to the seizure of the vehicle.

"(2) The owner of a rental vehicle that was seized under this section may continue to rent the vehicle upon recovery of the vehicle. However, the rental car agency shall not rent another vehicle to the driver of the vehicle that was seized until 30 days after the date that the vehicle was seized.

"(3) The rental car agency may require the person to whom the vehicle was rented to pay all towing and storage charges related to the impoundment and any administrative charges authorized under Section 22850.5 that were incurred by the rental car agency in connection with obtaining custody of the vehicle.

"(i) Notwithstanding any other provision of this section, the registered owner and not the legal owner shall remain responsible for any towing and storage charges related to the impoundment, any administrative charges authorized under Section 22850.5, and any parking fines, penalties, and administrative fees incurred by the registered owner." (Added by Stats. 1994, ch. 1221, § 13, p. 7565, amended by Stats. 1995, ch. 922, § 3; Stats. 1998, ch. 582, § 5.)

yield the right of way. Minning determined that Pennebaker's license had been formally suspended by the Department of Motor Vehicles on five separate occasions, including a current suspension, effective January 2000, for operating a vehicle with an excessive blood-alcohol level. Minning detained, arrested and issued a citation to Pennebaker for various Vehicle Code violations. He also impounded the Dodge pickup pursuant to section 14602.6, subdivision (a). Pennebaker signed the citation and, upon promising to appear in court, he was released from custody.

The registered owner of the pickup truck was Pennebaker's grandfather, 81-year-old Earl Smith, petitioner below and respondent on this appeal. Smith had loaned the vehicle to Pennebaker the day before, since Pennebaker's own vehicle was inoperable and he needed a vehicle to get to work. When Smith learned the pickup had been impounded, Smith went to the Santa Rosa Police Department (respondent below and appellant herein) and met with Officer Robert J. Kopriva who, with Smith's consent, thereafter conducted a storage hearing.

According to Smith's declaration filed in the writ proceeding, Smith had observed his grandson driving his own vehicle during the year and believed his grandson was validly licensed to drive. Smith told Kopriva that he did not know and had no reason to know his grandson's license was suspended. Smith further testified that Kopriva asked him if he had asked for or examined his grandson's driver's license before permitting him to drive, and Smith answered "no," but told Kopriva that he had no reason to believe that his grandson was not validly licensed. Smith averred that Kopriva told him that "it did not matter what I knew or did not know about my grandson's license status; since I had not asked for or examined my grandson's license, [Santa Rosa Police Department] would not release my vehicle and the vehicle would be held in impound for 30 days."

In his declaration, Kopriva stated that, when asked, Smith confirmed that he did not ask his grandson whether he had a driver's license and did not ask to see his grandson's license. Kopriva also declared that Smith said "he was aware that at some time in the past, his grandson had problems with his license, but he thought those problems had been resolved. Mr. Smith was not sure what those problems were." Based upon his review of documents and Smith's responses to his questions, Kopriva concluded that "Mr. Smith allowed his vehicle to be used by his grandson without making a reasonable effort or inquiry to determine whether his grandson possessed a valid license to operate the vehicle." Kopriva therefore made the decision to keep the pickup impounded for the 30 days provided by section 14602.6.

On or about July 5, 2000, Smith spoke with Traffic Sergeant Brad Marsh regarding the impounding of his truck. Marsh is the supervisor in charge of the traffic detail and oversees the hearing officers who handle poststorage hearings. Marsh reviewed the file and spoke with Kopriva and with Smith. He told Smith that because he had made no effort or inquiry to determine whether his grandson possessed a valid driver's license, Kopriva's decision would stand unless Smith could present additional evidence.

On July 18, 2000, Smith filed a petition for writ of mandate or mandamus with the Sonoma County Superior Court, seeking the release of his truck. Therein, in addition to the foregoing facts, Smith averred that the impound storage fee of $25 per day, when added to the $95 towing and $65 administrative fees would exceed the value of the vehicle (estimated to be between $600-$800) at the end of the 30-day impoundment.

The City of Santa Rosa (City) answered and filed opposition. After hearing, the trial court granted the petition, holding that Smith had proven he did not know his grandson's license was suspended and therefore had established "mitigating circumstances" warranting release of his truck under section 14602.6, subdivision (b). In its order granting the writ petition, the court stated: "The court is of the opinion that the mitigating circumstances set forth in § 14602.6(b) are fulfilled if the owner proves that he did not know that the driver was an unlicensed person, and the owner is not required to prove that he asked the person whether he had a valid license, or asked to see the person's license."

On April 20, 2001, the writ issued, ordering City, the Santa Rosa Police Department and/or Cream's Towing, Inc., to immediately release the truck to Smith upon his payment of $170 charges for towing and three days of storage. The court ordered the City to pay any additional storage charges or fees. The writ further ordered the City and the police department to "immediately implement a policy and procedure whereby a vehicle is released from impoundment under Vehicle Code § 14602.6, if the evidence presented by a registered owner at an impound hearing . . . establishes [a] mitigating circumstance including but not limited to the fact that the registered owner of the vehicle did not know that the driver of the vehicle had a suspended or revoked driver's license, or no driver's license, at the time the registered owner allowed the driver to operate the vehicle." The court refused to read into section 14602.6 the duty established by section 14604 that a registered owner must make a reasonable effort or inquiry to determine whether a

prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle.[3]

This timely appeal followed.[4]

DISCUSSION

*Issues.*

 Appellant City argues that the trial court incorrectly interpreted sections 14602.6 and 14604.

Respondent Smith argues that the trial court properly found that mitigating circumstances were present, warranting release of Smith's truck. Smith contends, however, that the trial court improperly placed the burden of proof of lack of knowledge that the driver was not validly licensed upon the registered owner seeking release of his or her vehicle before the end of the 30-day period. Smith argues the burden of proof should properly have been placed upon the impounding agency to show that the registered owner knew the driver was not validly licensed.[5]

*Standard of Review.*

 The parties agree that our review of the superior court's determination here is de novo. "Ordinarily, we would examine the superior court's

---

[3]Section 14604 provides in its entirety:

"(a) No owner of a motor vehicle may knowingly allow another person to drive the vehicle upon a highway unless the owner determines that the person possesses a valid driver's license that authorizes the person to operate the vehicle. For the purposes of this section, an owner is required only to make a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle. An owner is not required to inquire of the department whether the prospective driver possesses a valid driver's license.

"(b) A rental company is deemed to be in compliance with subdivision (a) if the company rents the vehicle in accordance with Sections 14608 and 14609."

[4]The City filed the appeal, presumably on behalf of itself and the police department. Although the record before us does not indicate that Cream's Towing, Inc., has appealed, it is named on the cover of briefs filed by the city attorneys as one of the respondents/appellants. However, the introduction to the appellants' opening brief states: "This is an appeal by the City of Santa Rosa from the judgment of the Superior Court of Sonoma County in a mandamus proceeding . . . ." It does not appear that Cream's Towing, Inc., has appealed and as the City was ordered to pay additional storage charges, Cream's Towing, Inc., does not appear to have been aggrieved by the ruling.

[5]As he did below, Smith argues also that section 14602.6 is void for vagueness as neither its language nor its legislative history provides guidance as to the meaning of the term "mitigating circumstances." Respondent also contends that as interpreted by the City, section 14602.6 is unconstitutional, as it denies private party vehicle owners equal protection of the law, denies them due process of law, and violates the Eighth Amendment proscription of excessive fines. We do not reach these constitutional claims.

findings after its independent review of the administrative record"—in this case the evidence before the hearing officer at the poststorage hearing—"to determine whether the findings were supported by substantial evidence. (*Machado* v. *Department of Motor Vehicles* (1992) 10 Cal.App.4th 1687, 1692 [13 Cal.Rptr.2d 457].)" (*Villalobos v. Zolin* (1995) 35 Cal.App.4th 556, 558 [41 Cal.Rptr.2d 207].) But the determinative question in this case is one of statutory construction of section 14602.6, and consequently is a question of law. (See generally *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 271 [32 Cal.Rptr.2d 807, 878 P.2d 566].) "On questions of law arising in mandate proceedings, we exercise independent judgment. (*McIntosh* v. *Aubry* (1993) 14 Cal.App.4th 1576, 1584 [18 Cal.Rptr.2d 680].)" (*Villalobos v. Zolin, supra,* 35 Cal.App.4th 556, 558.)

*Statutory Construction.*

In many respects, the court's order provides a template for our analysis here. We begin, as did the superior court, with the Supreme Court's admonition in *People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322]: " '[W]e must interpret the statute in question in accordance with applicable rules of statutory construction, fundamental among which are those which counsel that the aim of such construction should be the ascertainment of legislative intent so that the purpose of the law may be effectuated [citation]; that a statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts [citation]; and that courts should give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citation.]' (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].)"

Beyond doubt there is a legislative policy favoring prevention and punishment of unlicensed driving. (See § 14607.4 [legislative findings and declarations].) "And certainly this policy should be advanced to the extent permitted under the statutes as written. The first step in our analysis, however, is to focus on the words used by the Legislature in order to determine their traditional and plain meaning. [Citation.]" (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404].)[6]

The phrases "mitigating circumstances," "circumstances in mitigation," and "circumstances of mitigation" have been used in several statutes and

---

[6]Respondent Smith urges that in focusing upon the words of the statute, we should be guided by the rule that where the statute effects a forfeiture, it is penal in nature and should be strictly rather than broadly construed. (See *People v. One 1986 Cadillac Deville* (1999) 70 Cal.App.4th 157, 160-163 [82 Cal.Rptr.2d 509]; 3 Singer, Sutherland Statutory Construction

hundreds of cases in California. Mitigating circumstances are referred to, for instance, in statutes and rules relating to circumstances considered in aggravation or mitigation of sentence (e.g., Pen. Code, § 1170; Cal. Rules of Court, rules 4.405(e), 4.425(b), 4.420, 4.423; Veh. Code, § 23558 [considering whether to impose enhancement for driving under the influence causing injuries to more than one victim]); circumstances to be considered in the penalty phase of a capital case (e.g., Pen. Code, §§ 189.5, 190.3); circumstances considered in attorney discipline matters (e.g., Rules Proc. of State Bar, rules 133, 265, 662); circumstances considered in license revocation proceedings under the Fish and Game Code (Fish & G. Code, § 12155.5); circumstances considered in suspending or revoking teaching credentials (Ed. Code, § 44242.5, subd. (c)); and circumstances amounting to a defense of actions under civil libel statutes (Code Civ. Proc., § 461). ■ In a libel action, " 'The "mitigating circumstances" which section 461 of the Code of Civil Procedure allows the defendant to prove . . . are those which tend to show that the defendant in speaking the slanderous words acted in good faith, with honesty of purpose, and not maliciously' (*Clay* v. *Lagiss* (1956) 143 Cal.App.2d 441, 448 [299 P.2d 1025].)" (*Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d 926, 940 [119 Cal.Rptr. 82].)[7] Although criminal statutes and rules often specify some of the mitigating factors relating to the crime or to the defendant to be considered by the decision maker (e.g., Pen. Code, § 190.3, subds. (b)-(k); Cal. Rules of Court, rule 4.423), other statutes do not define or describe in detail the "mitigating circumstances" which may be considered as lessening culpability and therefore warranting a reduction in punishment.

Indeed, case law often considers whether mitigating circumstances apply to reduce culpability and therefore lessen punishment or damages, even

---

(6th ed. 2001) §§ 59:1-59:3, pp. 113-147, fns. omitted; but cf. *U.S.* v. *Ursery* (1996) 518 U.S. 267, 270 [116 S.Ct. 2135, 2138, 135 L.Ed.2d 549] [double jeopardy clause of Fifth Amendment does not preclude both punishing defendant for criminal offense and separate civil forfeiture of property]; *People* v. *Madeyski* (2001) 94 Cal.App.4th 659 [115 Cal.Rptr.2d 14] [no right to appointed counsel in action for civil forfeiture of property used in computer crime].) However, it is open to question whether the statute here at issue would be determined penal in nature. (See, e.g., *Bennis* v. *Michigan* (1996) 516 U.S. 442, 448, fn. 5, 451-452 [116 S.Ct. 994, 999, 1000-1001, 134 L.Ed.2d 68].) Therefore, we do not rely upon this canon of construction.

[7] In the case of *Wilson* v. *Fitch* (1871) 41 Cal. 363, 380-381 the court said: "The 'mitigating circumstances' which are permitted by [former] section sixty-three [now section 461] of the code to be pleaded and proved, must be such as tend to rebut the presumption of malice, or to reduce its degree. All libels are conclusively presumed to be, in some degree, malicious; but there are different degrees and phases of malice; and some actionable defamatory publications (all of which the law deems to be malicious, except privileged communications), are in fact published without actual malice. It is eminently just, therefore, that the defendants, with a view to reduce the damages, should be allowed to rebut the presumption of malice by the proof of what the statute terms 'mitigating circumstances'; that is to say, the circumstances under which the publication was made, and the real motives which induced it."

where the applicable statute does not expressly mention such a term. (See, e.g., *In re Leardo* (1991) 53 Cal.3d 1,10 [278 Cal.Rptr. 689, 805 P.2d 948]; *Fleming v. State Bar* (1952) 38 Cal.2d 341, 342 [239 P.2d 866] [cases construing Bus. & Prof. Code, §§ 6082, 6101 relating to attorney discipline]; *Harris v. Alcoholic Beverages Control Appeals Bd.* (1965) 62 Cal.2d 589, 595-597 [43 Cal.Rptr. 633, 400 P.2d 745], [construing Bus. & Prof. Code, § 24200 imposing penalties for violation of the Alcoholic Beverages Control Act].)

Black's Law Dictionary (7th ed. 1999) page 236 defines "mitigating circumstance" as: "1. A fact or situation that does not justify or excuse a wrongful act or offense but that reduces the degree of culpability and thus may reduce the damages (in a civil case) or the punishment (in a criminal case). 2. A fact or situation that does not bear on the question of a defendant's guilt but that is considered by the court in imposing punishment and esp. in lessening the severity of a sentence. . . ."

A similar definition of "mitigating circumstances" is found in CALJIC No. 8.88, which provides in pertinent part: "A mitigating circumstance is any fact, condition or event which does not constitute a justification or excuse for the crime in question, but may be considered as an extenuating circumstance in determining the appropriateness of the death penalty."

We believe these definitions are consistent with the usual and ordinary understanding of the term mitigating circumstances, and suggest the sense in which it was intended by the Legislature in the present context. (See *Mercer v. Department of Motor Vehicles, supra,* 53 Cal.3d 753, 763, fn. 5.) The above definitions indicate the term encompasses equitable considerations such as the good faith of the actor or circumstances lessening his or her culpability. Certainly nothing in the common uses of the phrase would prohibit consideration of the owner's lack of knowledge that the driver was unlicensed as a mitigating circumstance.

However, these common definitions do not necessarily render the term "mitigating circumstances" as used in section 14602.6, subdivision (b), subject to a plain meaning within that statutory framework. Smith argues that the fact that the owner does not actually know the driver is not validly licensed is sufficient to constitute a mitigating circumstance. (Indeed, he also argues the fact the driver is not the registered owner is in and of itself a mitigating circumstance, regardless of the owner's knowledge of the license status of the driver.)[8] The City argues to the contrary, that the owner's lack

---

[8]We reject Smith's claim that the mere fact he was not the unlicensed driver suffices to require the agency to immediately release his vehicle from impound and storage. Although it

of knowledge that the driver does not have a valid license is only a mitigating circumstance where the owner has first inquired as to the license status of the driver to whom he or she lends the car—in effect incorporating the duty established in section 14604 into the "mitigating circumstances" language of section 14602.6.

As these differing interpretations suggest, it is not altogether self-evident whether the statute's reference to "any mitigating circumstances" encompasses a duty by the owner to inquire of the driver whether the driver is validly licensed or to examine the borrower's license, before lending the vehicle.

Consequently, we turn to extrinsic sources to obtain evidence of legislative intent. (*Long Beach Peace Officers Assn. v. City of Long Beach* (1988) 46 Cal.3d 736, 743 [250 Cal.Rptr. 869, 759 P.2d 504].) ▮▮ "Because the words of the statute themselves provide no definitive answer, it is appropriate to refer to extrinsic sources for evidence of legislative intent. ' "Where [statutory language] is susceptible of more than one meaning, it is the duty of the courts to accept that intended by the framers of the legislation, so far as its intention can be ascertained." . . . To discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny.' [Citation.]" (*Id.* at p. 743, fn. omitted.)

*Legislative History.*

▮▮ The legislative history of section 14602.6 sheds little light upon the Legislature's intent in using the phrase "any mitigating circumstances."[9]

Section 14602.6 was added to the Vehicle Code by Statutes of 1994, chapter 1221, section 13, as part of a number of provisions dealing with the registration and licensing of vehicles, the revocation and suspension of licenses, and punishments for driving with a suspended or revoked license. It was introduced as Senate Bill No. 1758 by Senator Quentin Kopp on February 24, 1994. (Sen. Weekly Hist., No. 258 (1993-1994 Reg. Sess.) Oct. 5, 1994, p. 639.) Section 14602.6 regarding impounding and storage of vehicles driven by unlicensed drivers and section 14604 making it unlawful for a vehicle's owner to knowingly allow another person to drive the vehicle upon a highway without first making a reasonable effort or inquiry to determine that the driver had a valid driver's license were both contained,

---

may be a factor bearing upon the existence of mitigating circumstances, it is not determinative, as it would render mere surplusage section 14602.6 subdivisions (d)(1)(A), (B) (f), and (h) of the statute, specifying circumstances and conditions under which the impounding entity must immediately release the vehicle to the registered or legal owner.

[9]Upon motion of both parties, we have taken judicial notice of the legislative history of section 14602.6 and related statutes.

along with other provisions, in Senate Bill No. 1758 as originally introduced and ultimately enacted into law. (Text of Sen. Bill No. 1758 as chaptered, Stats. 1994, ch. 1221.)

The purpose of the bill, according to the Senate Committee on the Judiciary analysis "is to make changes in the vehicle code to deter people from driving with a suspended license or under the influence, and permanently revoke the license of a driver convicted of assault using a vehicle as a deadly weapon." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1758 (1993-1994 Reg. Sess.), as amended Apr. 14, 1994, p. 5.) The need for the bill was described therein by Senator Kopp: " '[U]nlicensed . . . drivers pose a threat to safety on our roads and highways.' " (*Ibid.*) " '[I]t is clear that disqualified drivers are substantially over-involved in fatal accidents in California.' " (*Ibid.*)

The bill analysis described then existing law, in relevant part as: "Does not prohibit a person who has control of a vehicle from procuring that vehicle for, or authorizing the use of that vehicle by, another person if the other person's driver's license has been suspended or revoked by the Department of Motor Vehicles . . . ." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1758 (1993-1994 Reg. Sess.) as amended Apr. 14, 1994, pp. 3-4.) The analysis continued that Senate Bill No. 1758 would "[p]rovide that it is a misdemeanor for a person having control of a vehicle to allow a driver to use the vehicle, knowing that the driver has a suspended license; [¶] Allow a law enforcement officer to arrest a person for driving with a suspended license; [¶] Allow a law enforcement officer to impound a vehicle for a 30 day period if the vehicle is driven by a person with a suspended license; . . ." (*Id.* at p. 5.)

As introduced and as originally enacted as section 14602.7, Senate Bill No. 1758 did not contain any language regarding "mitigating circumstances."[10]

On February 23, 1994, one day before introduction of Senate Bill No. 1758 by Senator Kopp, Assembly Member Richard Katz introduced

---

[10]As originally enacted, section 14602.6 provided: "(a) Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked or without ever having been issued a license, the peace officer may immediately arrest that person and cause the removal and seizure of that vehicle in accordance with Chapter 10 (commencing with Section 22650) of Division 11. A vehicle so impounded shall be impounded for 30 days.

"(b) The registered and legal owner of a vehicle that is removed and seized under subdivision (a) or their agents shall be provided the opportunity for a storage hearing to determine the validity of the storage in accordance with Section 22852.

"(c) Any period in which a vehicle is subjected to storage under this section shall be included as part of the period of impoundment ordered by the court under subdivision (a) of Section 14602.5 [relating to M1 or M2 (motorcycle) motor vehicles]." (Former § 14602.6 as added by Stats. 1994, ch. 1221 (Sen. Bill No. 1758), § 13, p. 7565.)

Assembly Bill No. 3148 (known as the Safe Streets Act of 1994), also aimed at increasing penalties for driving without a valid license, including a provision authorizing forfeiture of a vehicle as a nuisance when operated by an unlicensed individual who was the registered owner of the vehicle and who has a previous misdemeanor conviction for a violation of specified provisions. This provision of Assembly Bill No. 3148 was enacted as section 14607.6, subdivision (a). (Added by Stats. 1994, ch. 1133, § 12, p. 6724.) As enacted and in effect today, section 14607.6 also provided that "[i]f the driver of a vehicle impounded pursuant to this subdivision was not a registered owner of the vehicle at the time of impoundment, or if the driver of the vehicle was a registered owner of the vehicle at the time of impoundment but the driver does not have a previous conviction for a violation of [various specified Vehicle Code sections], the vehicle shall be released pursuant to this code and is not subject to forfeiture." (§ 14607.6, subd. (c)(5).)

As introduced, Assembly Bill No. 3148 would have, among other things, added a provision to the Vehicle Code in language virtually identical to that of section 14604 as introduced in Senate Bill No. 1758 to "make it unlawful for the owner of a motor vehicle to knowingly allow another person to drive the vehicle upon a highway unless the owner determines that the person possesses a valid driver's license that authorizes the person to operate the vehicle." (Legis. Counsel's Dig., Assem. Bill No. 3148 (1993-1994 Reg. Sess.) as amended June 27, 1994.) This provision was dropped from Assembly Bill No. 3148 when the Senate and Assembly bills were reconciled.

Perhaps because it provided for vehicle forfeiture, Assembly Bill No. 3148 contained extensive legislative findings and declarations concerning the hazards posed by unlicensed drivers. These findings and declarations were codified in section 14607.4 and they mirror in some respects the concerns voiced by Senator Kopp in introducing Senate Bill No. 1758.[11]

The bill analysis of Senate Bill No. 1758 when heard on June 27, 1994, in the Assembly Committee on Transportation chaired by Assembly Member

---

[11]Section 14607.4 provides: "The Legislature finds and declares all of the following:

"(a) Driving a motor vehicle on the public streets and highways is a privilege, not a right.

"(b) Of all drivers involved in fatal accidents, more than 20 percent are not licensed to drive. A driver with a suspended license is four times as likely to be involved in a fatal accident as a properly licensed driver.

"(c) At any given time, it is estimated by the Department of Motor Vehicles that of some 20 million driver's licenses issued to Californians, 720,000 are suspended or revoked. Furthermore, 1,000,000 persons are estimated to be driving without ever having been licensed at all.

"(d) Over 4,000 persons are killed in traffic accidents in California annually, and another 330,000 persons suffer injuries.

"(e) Californians who comply with the law are frequently victims of traffic accidents caused by unlicensed drivers. These innocent victims suffer considerable pain and property loss at the hands of people who flaunt the law. The Department of Motor Vehicles estimates

Katz, observed that Senate Bill No. 1758, among other things: "7) Requires any vehicle impounded because the driver was driving without a valid license to be impounded for 30 days. [¶] 8) *Creates a new separate misdemeanor violation* prohibiting any person having control of a vehicle from allowing another driver to use the vehicle, if the person having control knows that the other driver does not have a valid license." (Assem. Com. on Transportation, Analysis of Sen. Bill No. 1758 (1993-1994 Reg. Sess.) as amended Aug. 8, 1994, p. 2, italics added.)

At the third reading in the Senate, following amendment of August 25, 1994, the bill analysis for Senate Bill No. 1758 observed: "With recent amendments, there is no longer any conflict between this bill and AB 3148 (Katz), and the bills are complementary. AB 3148's vehicle forfeiture provisions will only apply to a specified group of the most dangerous illegal drivers, and this bill applies to the other drivers." (Sen. Floor Analysis, 3d reading of Sen. Bill No. 1758 (1993-1994 Reg. Sess.) as amended Aug. 29, 1994, p. 3.)

Senate Bill No. 1758 passed the Assembly on August 30, 1994, and the Senate on August 31, 1994. On that date, Senator Kopp submitted a letter regarding its interpretation. "The Senate Journal for the 1993-94 Regular Session, p. 7023, contained the following letter from Senator Kopp, dated Aug. 31, 1994, regarding Senate Bill No. 1758 (Stats. 1994, ch. 1221): [¶] 'This letter is to ensure accurate interpretation of two provisions of Senate Bill 1758 related to the operation of vehicles by unlicensed drivers. [¶] 'With respect to the vehicle impound and storage provisions in Vehicle Code Section 14602.6, *SB 1758 is intended to address culpable conduct by the owner-operator of a vehicle. It is not intended to impose a 30-day impound penalty on a vehicle owner under the following circumstances;* when the vehicle has been stolen; when the vehicle is subject to bailment and driven by an unlicensed employee of a business establishment, including a parking

---

that 75 percent of all drivers whose driving privilege has been withdrawn continue to drive regardless of the law.

"(f) It is necessary and appropriate to take additional steps to prevent unlicensed drivers from driving, including the civil forfeiture of vehicles used by unlicensed drivers. The state has a critical interest in enforcing its traffic laws and in keeping unlicensed drivers from illegally driving. Seizing the vehicles used by unlicensed drivers serves a significant governmental and public interest, namely the protection of the health, safety, and welfare of Californians from the harm of unlicensed drivers, who are involved in a disproportionate number of traffic incidents, and the avoidance of the associated destruction and damage to lives and property.

"(g) The Safe Streets Act of 1994 is consistent with the due process requirements of the United States Constitution and the holding of the Supreme Court of the United States in *Calero-Toledo v. Pearson Yacht Leasing Co.* [(1974)] 40 L.Ed.2d 452 [94 S.Ct. 2080, 40 L.Ed.2d 452]." (§ 14607.4.)

service or repair garage; or *when the owner has not knowingly allowed an unlicensed person to drive.* [¶] 'With respect to the provisions of Vehicle Code Section 14604, it is intended that lenders and lessors have complied with the requirement to make a "reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license" if the lender or lessor has inquired whether the borrower or lessee has a valid driver's license at the inception of the vehicle loan or lease.' " (Historical and Statutory Notes, 66 West's Ann. Ed. Code (2000 ed.) foll. § 14602.6, p. 443, italics added.)

Following passage of Assembly Bill No. 3148, Assembly Member Katz on September 2, 1994, sent the Governor a letter urging him to sign the bill into law and stating that Assembly Bill No. 3148 and Senate Bill No. 1758 were "complementary" measures, Assembly Bill No. 3148 applying to the most dangerous repeat offenders and subjecting only vehicles *owned* by the illegal driver to forfeiture, while Senate Bill No. 1758 provided for impoundment for a period of time for vehicles driven by drivers not lawfully licensed that are not subject to forfeiture under Assembly Bill No. 3148.[12] (Assem. Member Katz, sponsor of Assem. Bill No. 3148 (1993-1994 Reg. Sess.) letter to Governor Wilson, Sept. 2, 1994.)

The "mitigating circumstances" language was added to section 14602.6, subdivision (b) in 1995. (Amended by Stats. 1995, ch. 922 (Sen. Bill No. 833), § 3.) That amendment also added subdivisions (d) through (i) relating to the release of an impounded vehicle and accompanying charges and fees.

The Assembly analysis of this amendment asserted, in pertinent part, that "[l]aw enforcement agencies throughout the state have made frequent and effective use of the recently-enacted vehicle impoundment provisions, impounding thousands of vehicles being operated by drivers with suspended or revoked licenses, or unlicensed drivers. [¶] . . . [¶] The bill's impoundment

---

[12]The letter stated: "AB 3148, the Safe Streets Act of 1994 . . . cracks down on persons driving illegally with suspended or revoked driver's licenses, or without any issued license. AB 3148 calls for the impoundment of vehicles driven by these illegal drivers, and provides for the forfeiture of vehicles in the case of repeat offenders. . . . [¶] The forfeiture provisions are narrowly applied to the most dangerous repeat offenders who continue to drive illegally after having been convicted of at least one prior misdemeanor offense for driving without a valid license. Only vehicles owned by the illegal driver are subject to forfeiture, and the bill contains protections for lienholders and community property interests. . . . . [¶] . . . [¶] A complementary measure, SB 1758 (Kopp), provides an impoundment period for vehicles driven by suspended, revoked, and unlicensed drivers that are not subject to forfeiture under AB 3148. The two bills together comprise the toughest statewide crackdown on this problem in the nation, and are necessary to protect our constituents from dangerous drivers." (Assem. Member Katz, sponsor of Assem. Bill No. 3148 (1993-1994 Reg. Sess.) letter to Governor Wilson, Sept. 2 1994.)

and release provisions are intended to address uncertainties and situations which have arisen since SB 1758 took effect in January 1995. Numerous financial institutions and rental agencies have reported their inability to reclaim vehicles they legally own but which are leased, financed or rented to others. Some law enforcement agencies have refused to release such vehicles before the end of the 30 days, resulting in significant impoundment charges to the legal owners when the registered owners subsequently do not reclaim the vehicles. [¶] The provisions clarifying the 30-day impoundment law are consistent with the Safe Streets Act of 1994 [AB 3148 (Katz), Chapter 1133, Statutes of 1994] which confiscates vehicles if a driver is caught driving either with a suspended or revoked license, or has never had a license, and has a prior conviction for one of these offenses. . . ." (Assem. Floor Analysis, 3d reading of Sen. Bill No. 833 (1995-1996 Reg. Sess.) as amended Sept. 12, 1995, pp. 4-5.)

According to the analysis, Senate Bill No. 833 "[c]larifies the application of the vehicle impoundment provisions and specif[ies] conditions and procedures for the release of a vehicle prior to 30 days. Specifically, this bill:

"a) Authorizes the impoundment for 30 days of a vehicle involved in an accident caused by a driver with a suspended or revoked license or an unlicensed driver, without the necessity of arresting the driver.

"b) Allows the impounding agency to consider *any mitigating circumstances* during a hearing to determine the validity of a 30-day impoundment.

"c) Requires an impounding agency to release a vehicle prior to the end of the 30-day period: [¶] i) when the vehicle was stolen; [¶] ii) When the vehicle was driven by an unlicensed employee of a business (e.g., parking service or repair facility); [¶] iii) When the driver's license was suspended or revoked for minor or nondriving-related violations; and [¶] iv) When all towing and storage fees and charges are paid.

"d) Requires the release of an impounded vehicle to the legal owner before 30 days, if all of the following conditions are met: [¶] i) The legal owner is a specified financial institution, vehicle dealer or another person, not the registered owner, holding a security interest in the vehicle; [¶] ii) All towing, storage fees and charges are paid; and, [¶] iii) The legal owner presents foreclosure or repossession documents to the impounding agency.

"e) Prohibits vehicles released early to legal owners from subsequently being returned to the original or registered driver and prohibits rental agencies from renting another vehicle to the cited driver before the 30 days

expired." (Assem. Floor Analysis, 3d reading of Sen. Bill No. 833 (1995-1996 Reg. Sess.) as amended Sept. 12, 1995, pp. 2-3, italics added.)

A 1998 amendment to section 14602.6 made changes not relevant to this discussion (Stats. 1998, ch. 582 (Sen. Bill No. 117), § 5), as did amendments adopted in 2001. (Stats. 2001, ch. 480 (Assem. Bill No. 360), § 1, Stats. 2001, ch. 554 (Assem. Bill No. 783), § 2.5.)

Although sections 14602.6 and 14604 were companion pieces of legislation, aimed at reducing the harm caused by drivers with suspended, revoked or no licenses, there is nothing in the legislative history of either section that would support reading into the "any mitigating circumstances" language of section 14602.6 concerning the impound and storage of vehicles driven by such drivers, the mandate of section 14604 that the registered and legal owner of the vehicle must inquire about the license status of the driver to whom the owner lends the vehicle.

■ In its analysis of the legislative history of section 14602.6, the trial court recognized that, "In construing a statute 'we do not consider the motives or understandings of an individual legislator even if he or she authored the statute.' (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 801, fn. 12 [268 Cal.Rptr. 753, 789 P.2d 934]; accord, *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371],)" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 569 [20 Cal.Rptr.2d 341, 853 P.2d 507].) Nevertheless, it concluded that Senator Kopp's August 30, 1994 letter, purporting to clarify the impound and storage provisions of section 14602 as originally enacted, having been made part of the record of the Legislature, was relevant in determining the understanding of the Legislature as a whole and was entitled to be considered by the court in determining the interpretation of the enactment.

In *In re Marriage of Bouquet, supra,* 16 Cal.3d 583, our Supreme Court recognized that "[i]n construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.] Nor do we carve an exception to the principle simply because the legislator whose motives are proferred [*sic*] actually authored the bill in controversy [citation]; no guarantee can issue that those who supported his proposal shared his view of its compass." (*Id.* at pp. 589-590.) Nevertheless, it held the court could consider a letter of the author referring to debate which could illuminate the interpretation of the statute intended by the Legislature and where the letter was printed in the Senate Journal on motion of a senator as a " 'letter of legislative intent.' " (*Id.* at p. 590.) The Supreme Court has required that such a letter refer to arguments presented to legislators before it may be considered. (*California Teachers Assn. v. San Diego*

*Community College Dist.* (1981) 28 Cal.3d 692, 700-701 [170 Cal.Rptr. 817, 621 P.2d 856]; *In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 590; see also *McGlothlen v. Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1015-1016 [140 Cal.Rptr. 168].)

" ' "A legislator's statement is entitled to consideration, however, when it is a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion. [Citations.] . . . The statement of an individual legislator has also been accepted when it gave some indication of arguments made to the Legislature and was printed upon motion of the Legislature as a "letter of legislative intent." [Citation.]' (*California Teachers Assn. v. San Diego Community College Dist.*[, *supra,*] 28 Cal.3d 692, 699-701 . . . ; accord, *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 377 [20 Cal.Rptr.2d 330, 853 P.2d 496]; *Delaney v. Superior Court, supra,* 50 Cal.3d at pp. 800-801, fn. 11.)" (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 591, fn. 9 [37 Cal.Rptr.2d 653].)

 That Senator Kopp's letter was included in the Senate Journal after passage of Senate Bill No. 1758, standing alone, does not persuade us that his view of the legislation was considered by the Legislature as a whole or was part of any debate on the legislation. (See, e.g., *In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 589.) But for the later amendment of the section, we would view it as completely irrelevant to the interpretation of the statute.

However, Senator Kopp's views on the proper interpretation of the statute were before the Legislature that enacted the *amendments* to section 14602.6, which amendments allowed consideration of "any mitigating circumstances" during the impound hearing. In such case, it is reasonable to conclude that the "mitigating circumstance" language was consistent with the views expressed by Senator Kopp and intended to clarify section 14602.6. The 1995 amendment (authored by Senator Kopp and co-authored by Assembly Member Katz) adding the term "any mitigating circumstances" to the statute was introduced less than a year after passage of section 14602.6. In addition to adding the mitigating circumstances language to subdivision (b), the amendment also explicitly added the other circumstances voiced by Senator Kopp in his letter, by which the owner could recover the vehicle before the expiration of the 30-day period. Specifically, the amendment also provided the agency was to release the impounded vehicle before the 30-day storage period where the vehicle was stolen, or was subject to a bailment by an unlicensed employee of a parking service or repair garage. (Stats. 1995, ch. 922 (Sen. Bill No. 833), § 3.)

*Statutory Context.*

In addition to the legislative history of section 14602.6, we consider the statutory context of the statute. " ' "[E]very statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' " (*City of Petaluma v. County of Sonoma* (1993) 12 Cal.App.4th 1239, 1244 [15 Cal.Rptr.2d 617]; see *Select Base Materials, Inc. v. Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Reference to related statutes may be helpful. (See *Mercer v. Department of Motor Vehicles, supra,* 53 Cal.3d 753, 763, 769 [use of similar terms in related statutes suggestive of legislative intent].)

None of the other statutes relating to unlicensed drivers use the term "mitigating circumstances." Nevertheless, the City urges a narrow definition for the term, arguing that "mitigating circumstances" imports section 14604's duty of inquiry, requiring an owner to inquire as to the license status of the driver in order to thereafter assert lack of knowledge of the unlicensed status of the driver as a mitigating circumstance. We disagree.

Although sections 14604 and 14602.6 were introduced in the same bill and both aimed at reducing the incidence of unlicensed driving and punishing such behavior, there is no reference to or incorporation of section 14604 into section 14602.6. We are not persuaded that the Legislature intended to so narrow the definition of "mitigating circumstances" where the registered and legal owner, who was not the unlicensed driver, seeks restoration of the vehicle before expiration of the 30-day storage period. Had the Legislature wished to import the standard of culpability set forth in section 14604 into section 14602.6, it easily could have done so.

More importantly, section 14604 is a criminal statute. It does not involve impound or storage of automobiles driven by unlicensed drivers. Rather, section 14604 imposes criminal liability upon an owner who knowingly allows another person to drive the owner's vehicle without first determining the driver possesses a valid driver's license. The statute continues in relevant part: "For the purposes of this section, an owner is required only to make a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle. An owner is not required to inquire of the department whether the prospective driver possesses a valid driver's license." (§ 14604, subd. (b).) That standard for criminal liability could conceivably furnish a basis for a negligence finding in a civil action for damages against an owner who did not make a reasonable effort to determine whether the prospective driver possessed a valid license before allowing the driver to operate the

owner's vehicle where injuries were proximately caused thereby. (See Evid. Code, § 669; see generally 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts §§ 818, 819, pp. 170-173 [violation of a criminal statute may constitute negligence per se].)[13] However, it does not follow that the inquiry standard necessarily would apply to an owner trying to retrieve his vehicle from impound. It is reasonable to assume that a *less* stringent standard would apply to the owner seeking to retrieve his property from impound than to an owner sought to be held liable for damages caused by allowing an unlicensed driver to drive the owner's car.

We agree with the trial court, which found it more reasonable to interpret section 14602.6 by referring to other impound statutes contained in the Vehicle Code; specifically sections 14602.5, 14602.7 and 14607.6.

Section 14602.5 provides for impound of motorcycles driven by a person while his or her driving privilege has been suspended or revoked. It provides in relevant part: "Whenever a person is convicted for driving any class M1 or M2 motor vehicle, while his or her driving privilege has been suspended or revoked, of which vehicle he or she is the owner, *or of which the owner permitted the operation, knowing the person's driving privilege was suspended or revoked*, the court may, at the time sentence is imposed on the person, order the motor vehicle impounded in any manner as the court may determine. . . ." (§ 14602.5, italics added.) Actual knowledge that the driver was not validly licensed is required before the court may order the impound of a motorcycle driven by someone other than the owner. There is no indication of any requirement that the owner inquire about the license status of the driver before allowing the driver to drive and appellant does not contend that an inquiry duty should be read in to the knowledge requirement of this similar statute.[14]

Section 14602.7 allows a magistrate to issue an order authorizing a peace officer to impound a vehicle when the officer establishes reasonable cause to

[13]"What constitutes due care under the circumstances is ordinarily a question of fact for the jury in each case. (See supra, § 749.) But the proper conduct of a reasonable person in particular situations may become settled by judicial decision, or be prescribed by statute or ordinance, and conduct below this standard is negligence per se, or negligence as a matter of law. 'And if the evidence establishes that the plaintiff's or defendant's violation of the statute or ordinance proximately caused the injury and no excuse or justification for violation is shown by the evidence, responsibility may be fixed upon the violator without other proof of failure to exercise due care.' [Citation.]" (6 Witkin, Summary of Cal. Law, *supra*, Torts § 818, pp. 170-171, italics omitted.) "Rules and standards for driving and parking motor vehicles, established by the Vehicle Code and local ordinances, are the most common types of regulations the violation of which constitutes negligence per se." (*Id.* at § 818, p. 171.)

[14]City argues that section 14602.5 offers no better guidance than section 14604 as to the meaning of "mitigating circumstance" in section 14602.6, as it was enacted in 1990, four years before enactment of the statute at issue here, that it is a penal statute requiring judicial and not administrative action, and that it expressly contains a knowledge requirement. We

believe the vehicle was used to flee a police officer or was driven in a reckless manner. However, the registered owner of the vehicle need only show that he was not the driver who fled or evaded the police officer to obtain immediate release of the vehicle.[15] Knowledge or lack thereof that the driver was not validly licensed is not relevant to this impound statute. If the owner was not the driver, the owner need only prove such to obtain immediate release of his or her vehicle. This is the case even though the vehicle was used in circumstances far more serious than driving without a valid license.

Under section 14607.6, the vehicle is subject to forfeiture as a nuisance if it is driven by the registered owner who has lacks a valid license and who was previously convicted of a specified misdemeanor, including driving without a license. The statute provides that "[i]f the driver of a vehicle impounded pursuant to this subdivision was not a registered owner of the vehicle at the time of impoundment . . . the vehicle shall be released pursuant to this code and is not subject to forfeiture." (§ 14607.6, subd. (c)(5).) The Legislature clearly intended forfeiture under this section to apply only where the driver was the registered owner and had previous convictions. This is consistent with the legislative history indicating forfeiture was to apply in cases where the driver was also the registered owner with a history of prior unlawful driving behavior. Moreover, under section 14607.8 even where the statutory requisites are met and the unlicensed driver is the registered owner, the trial court has *discretion* to deny forfeiture. (In *People v. One 1986 Cadillac Deville, supra,* 70 Cal.App.4th 157, 160-163.)

In *People v. One 1986 Cadillac Deville, supra,* 70 Cal.App.4th 157, the court described some of the factors which might bear on the court's exercise of discretion to impose a forfeiture under section 14607.6. "Mitigating or aggravating factors may bear on the decision, *e.g., whether the driver knew the license was invalid.*" (70 Cal.App.4th at p. 163, italics added.)

These companion Vehicle Code statutes, although distinguishable in particular respects from section 14602.6, are also part of the statutory scheme

---

disagree. Although different in some respects, both section 14602.5 and section 14602.6 concern impoundment of vehicles, a subject not addressed by section 14604.

[15]"An impounding agency shall release a vehicle to the registered owner or his or her agent prior to the end of the impound period and without the permission of the magistrate authorizing the vehicle's seizure under any of the following circumstances: [¶] (A) When the vehicle is a stolen vehicle. [¶] (B) When the vehicle is subject to bailment and is driven by an unlicensed employee of the business establishment, including a parking service or repair garage. [¶] (C) *When the registered owner of the vehicle causes a peace officer to reasonably believe, based on the totality of the circumstances, that the registered owner was not the driver who violated Section 2800.1, 2800.2 or 2800.3, the agency shall immediately release the vehicle to the registered owner or his or her agent.*" (§ 14602.7, subd. (b)(1), italics added.)

for addressing the problem of unlicensed drivers by impound, storage and vehicle forfeiture provisions. They provide strong support that the Legislature intended to deal more leniently with registered owners who had no actual knowledge of the invalid license status of drivers using their vehicles. Indisputably, the Legislature intended to reserve forfeiture of vehicles to "apply only to a specified group of the most dangerous illegal drivers" (Sen. Bill Analysis, 3d reading of Sen. Bill No. 1758 (1993-1994 Reg. Sess.) as amended Aug. 25, 1994, p. 13)—the most egregious driver-owner violators of the law.

In this case, given the value of the vehicle and the costs of storage, application of the 30-day storage period of section 14602.6 effects a forfeiture of the vehicle in circumstances where the registered owner did not know the license of the driver to whom he loaned his car had been suspended. We believe at a minimum, that the term "mitigating circumstances" as used in section 14602.6 encompasses the circumstances present here. The addition of the term "any mitigating circumstances" to section 14602.6, indicates the Legislature did not intend to punish the failure of the owner to inquire as to the license status of the driver by the effective forfeiture of the vehicle.[16]

*Burden of Proof of Mitigating Circumstance.*

Respondent Smith contends the court erred in placing upon him the burden of proving the applicable mitigating circumstance that he lacked knowledge that the driver was unlicensed. He argues that the impounding agency must prove the absence of any mitigating circumstance to retain the vehicle for the full 30-day storage period. We disagree.

"As provided by Evidence Code section 500: 'Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.' Once this initial burden is met, the opposing party will be charged with producing its own evidence as to the matters established. '(a) The burden of producing evidence as to a particular fact is on the party against whom a finding on that fact would be required in the absence of further evidence. [¶] (b) The burden of producing evidence as to a particular fact is initially on the party with the burden of proof as to that fact.' (Evid. Code, § 550.) ' "Burden of producing evidence" means the obligation of a party to

---

[16]It is worth noting that by recent amendment, a vehicle forfeiture provision of the Fish and Game Code provides in relevant part: "In determining whether or not to order forfeiture of a vehicle, the court shall, in addition to any other relevant factor, consider whether the defendant is the owner of the vehicle and whether the owner of the vehicle had knowledge of the violation." (Fish & G. Code, § 12157, subd. (c)(2) [providing for vehicle forfeiture for taking birds, mammals, fish, reptiles or amphibia in violation of that code].)

introduce evidence sufficient to avoid a ruling against him on the issue.' (Evid. Code, § 110.) Thus, if a plaintiff presents evidence to establish each element of its case, the defendant has the burden of going forward with its own evidence as to those issues. This does not alter the ultimate burden of proof, which rests with the plaintiff to prove each of the relevant facts supporting its cause of action." (*Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 144-145 [80 Cal.Rptr.2d 126], italics omitted.)

The statutory scheme for poststorage hearings set forth in section 22852 and incorporated by reference in section 14602.6, subdivision (b), places the burden of establishing the authority for, and the validity of, the removal squarely upon the storing agency. (§ 22650, subd. (a).[17]) It is the agency's burden to show that the vehicle was validly seized. However, the agency need not negate every conceivable mitigating circumstance, absent any evidence that mitigating circumstances exist. It is up to the owner asserting that mitigating circumstances warrant release of the vehicle before expiration of the 30-day storage period to produce evidence of such mitigating circumstances.

As stated earlier, the presence of mitigating circumstances does not justify or excuse the wrongful act, but rather reduces the degree of culpability of the actor and arguably warrants a reduction in punishment. Consequently, as is the case in other contexts where a defendant claims that mitigating circumstances lessen culpability and warrant lesser or no discipline or punishment, assertion and proof of such is the burden of the person asserting the presence of mitigating circumstances. (See, e.g., *Carnation Co. v. Olivet Egg Ranch* (1986) 189 Cal.App.3d 809, 816-817 [229 Cal.Rptr. 261] [under Cal. U. Com. Code, § 2715, subd. (2)(a), as in breach of contract actions generally, the burden of proof is on the party whose breach caused damage, to establish matters relied on to mitigate damage]; *People ex rel. State Air Resources Bd. v. Wilmshurst* (1999) 68 Cal.App.4th 1332 [81 Cal.Rptr.2d 221] [proof that actual damages less than liquidated maximum provided in a penalty statute lies with defendant]; *Warner v. State Bar* (1983) 34 Cal.3d 36, 42-43 [192 Cal.Rptr. 244, 664 P.2d 148] [in attorney discipline proceeding, respondent attorney has the burden of establishing the mitigating circumstances and rehabilitation]; *In the Matter of Spaith* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 511, 1996 WL 453600, *6 (Cal. Bar Ct.) [same]; *In the Matter of Twitty* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 664, 673 [same]; Code

---

[17]"(a) Those law enforcement and other agencies identified in this chapter as having the authority to remove vehicles shall also have the authority to provide hearings in compliance with the provisions of Section 22852. During these hearings the storage agency shall have the burden of establishing the authority for, and the validity of, the removal." (§ 22650, subd. (a).)

Civ. Proc., § 461 [libel statute places burden on one asserting mitigating circumstances].)

Use of the term in this statute appears to us no different.

As the court below found, the evidence showed without contradiction that Smith did not know and had no reason to know his grandson was unlicensed. Officer Kopriva stated that Smith informed him that Smith knew at some time in the past that his grandson had problems with his license, which problems he believed had been resolved. That statement does not undermine Smith's assertion that he did not know his grandson was not validly licensed. By requiring Smith to show he had made a reasonable inquiry as to the license status of his grandson, the City used an improper standard in determining whether to keep the impounded pickup truck for the full 30 days and abused its discretion in refusing to find mitigating circumstances in Smith's lack of actual knowledge under the facts of this case.

We conclude the trial court properly determined that the mitigating circumstances set forth in section 14602.6, subdivision (b), are demonstrated where the owner proves he or she did not know that the driver was not validly licensed and that the owner is not either required to ask the driver whether the driver has a valid license or to ask to see the license in order to recover the vehicle before expiration of the 30-day storage period.

## DISPOSITION

We affirm the judgment of the trial court issuing the writ of mandamus. Respondent Smith shall recover his costs on this appeal.

Haerle, J., and Lambden, J., concurred.