Filed 8/6/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BLAKE MCKENNA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LANCE BEESLEY et al.,<br><br>    Defendants and Respondents. | D077189<br><br><br>(Super. Ct. No. 37-2018-00009594-CU-PA-CTL) |

APPEALS from judgments of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Judgments and orders reversed.

Ritter & Associates, Dwight F. Ritter, Karen L. Albence; Williams Iagmin and Jon R. Williams for Plaintiff and Appellant.

Friedenthal, Heffernan & Brown and Jay D. Brown for Defendant and Respondent Lance Beesley.

Gordon Rees Scully Mansukhani and Don Willenburg for Defendant and Respondent Smoothreads, Inc.

# I.

# INTRODUCTION

The California Supreme Court has explained that the tort of negligent entrustment of a motor vehicle and the tort of negligent hiring of a person to drive a vehicle are both premised on the "[a]wareness [by the defendant], constructive or actual, that a person is unfit or incompetent to drive." (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1157 (*Diaz*).)  In this appeal, we consider two issues related to the scope of the constructive knowledge element of these torts.

First, we consider the effect of the Legislature's enactment of Vehicle Code section 14604,[1] on the common law tort of negligent entrustment of a motor vehicle.  Section 14604 requires an owner of a motor vehicle "to make a reasonable effort or inquiry to determine whether [a] prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle."  We conclude that a jury may find that an owner who breaches its section 14604 duty and permits an unlicensed driver to drive the owner's vehicle had constructive knowledge of the driver's incompetence to drive.

We also consider whether a person may be held liable for the common law tort of negligent hiring when the person hires another and allows the hiree to drive a vehicle under the hirer's control without making a reasonable effort or inquiry to determine whether the hiree has an appropriate driver's license, and the hiree in fact lacks such license.  (See § 14606, subd. (a) ["A person shall not . . . hire . . . any person to drive a motor vehicle owned by

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Vehicle Code.

him or her or under his or her control upon the highways unless that person is licensed for the appropriate class of vehicle to be driven"].) Under these circumstances, we conclude that a jury may find that the hirer had constructive knowledge of the hiree's incompetence to drive.[2]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The complaint*

In February 2018, Blake McKenna filed a form complaint against Lance Beesley and Smoothreads, Inc. (Smoothreads).[3] McKenna checked boxes on the form complaint indicating that he was bringing causes of action for "Motor Vehicle," and "General Negligence." McKenna also checked a box indicating that he was bringing causes of action styled as "Negligence Per Se, [and] Negligent Entrustment."

In an attachment to the complaint, McKenna alleged that on August 4, 2017, he was a pedestrian lawfully crossing the street when he was struck by a vehicle driven by Ann Rogers. McKenna alleged that Rogers's vehicle struck him due to the negligence of "Doe 1," (i.e., Ronald Wells)[4] who had

---

[2] We emphasize that we do not hold that an owner or hirer's failure to make a reasonable effort or inquiry into the driver's or hiree's licensure status, *in and of itself*, establishes civil liability, or even actionable negligence. Rather, we hold only that such evidence provides a sufficient basis for a jury to find that the plaintiff has proven the constructive knowledge element of these torts.

[3] McKenna also sued Ann Rogers, another driver involved in the accident that forms the basis for his action. Rogers is not a party to this appeal. McKenna's complaint also named several Doe defendants.

[4] As we explain in parts II.B and II.C, *post*, it is undisputed that Beesley hired Wells to perform work on Beesley's home and permitted Wells to drive the vehicle that was involved in the accident. We refer to "Doe 1" as Wells,

3

"negligently [run] a red light." Specifically, McKenna alleged that Wells negligently drove his vehicle through a red light, striking Rogers's vehicle, and that Rogers's vehicle in turn struck McKenna.[5] McKenna alleged that he suffered severe bodily injuries as a result of the accident.

McKenna also alleged that Wells was driving a vehicle owned by Beesley and Smoothreads.[6] McKenna further alleged that Beesley and Smoothreads knew or should have known that, due to Wells's past driving experience and/or lack of driving experience, Wells was a negligent driver who created a risk of harm to persons and property and that Beesley and Smoothreads nevertheless knowingly entrusted Wells with the use of the vehicle involved in the accident.[7]

---

because the parties assumed for purposes of the proceedings relevant to this appeal, that Wells was the driver identified as "Doe 1" in McKenna's complaint.

[5]    McKenna's complaint also alleged that Wells violated several Vehicle Code provisions, including a provision pertaining to a driver's responsibilities *after* an accident. As Beesley summarizes in his brief, "[T]he driver of [Smoothreads's vehicle (assumed to be Wells for purposes of this appeal),] exited the vehicle, surveyed the damage, and then fled on foot."

[6]    In a separate attachment to the form complaint, McKenna checked boxes indicating that: Wells was an operator of a motor vehicle; Beesley and Smoothreads employed Wells; Beesley and Smoothreads owned the vehicle and permitted it to be operated by Wells; Beesley and Smoothreads entrusted the vehicle to Wells; and Wells was an agent of Beesley and Smoothreads. It is undisputed that, in fact, Smoothreads, and not Beesley, owned the vehicle. (See pt. II.B and C, *post*.)

[7]    Specifically, McKenna alleged, "[McKenna] is informed and believes that [Beesley and Smoothreads] knowingly and/or negligently entrusted their insured truck to [Wells] . . . an incompetent driver, whom they knew or should have known was incompetent to drive and [Beesley and Smoothreads

4

B.  *Smoothreads's motion for summary adjudication*

Smoothreads filed a motion for summary adjudication in May 2019 in which it sought a determination that McKenna could not prevail on a claim of negligent entrustment against it, among other arguments.[8]  In a supporting brief, Smoothreads explained that, for purposes of its motion, it assumed that Smoothreads, through Beesley, had granted Wells permission to drive the vehicle that was involved in the accident.[9]  However, Smoothreads contended that it was entitled to summary adjudication of McKenna's negligent entrustment claim against it because there was no "evidence . . . to demonstrate that Smoothreads . . . had any actual or constructive knowledge that the vehicle operator was an incompetent, reckless or inexperienced driver."

Smoothreads argued in relevant part:

> "The sole officer and shareholder of Smoothreads is . . . Beesley.  [Citation.]  Beesley hired Wells to perform some various home construction projects at the Beesley home.  [Citation.]  Wells represented that he had an active California contractor's license and around 40 years of experience in the industry.  [Citation.]  In fact, when Wells arrived at the Beesley home, Wells was driving his own vehicle.  [Citation.]  These undisputed facts demonstrate that Smoothreads, by and through Beesley, had absolutely no reason to suspect any level of driving incompetence or unfitness on the part of Wells.  Beesley understood that Wells was an experienced contractor, with an active contractor's license, and Wells arrived driving his own

---

are] thus liable for the injuries that resulted to . . . McKenna from the collision . . . ."

[8]  Smoothreads argued that its liability to McKenna, if any, should be limited to $15,000 pursuant to section 17151.  (See fn. 14, *post*.)

[9]  Smoothreads also acknowledged that it was "the owner of a vehicle involved in the accident."

vehicle. Nothing about that situation puts Smoothreads 'on notice' of any incompetence or unfitness with respect to Wells['s] driving ability.

"Similarly, [McKenna] cannot show any actual knowledge of unfitness. Wells never informed Beesley of any history with bipolar disorder [citation], never informed him of any history of alcohol problems [citation], never informed him of any history of DUI arrests [citation], never informed him of any arrests in his driving history [citation], and never informed him that he did not have a driver's license.[10] [Citation.] Simply stated, Smoothreads, by and through Beesley, lacked the required actual knowledge in order for [McKenna] to prevail on a negligent entrustment theory. Given this lack of knowledge, either actual or constructive, about any level of unfitness or incompetence with respect to Wells, Smoothreads, by and through Beesley, had absolutely no 'duty to inquire' any further. Instead, Smoothreads was 'entitled to rely on [Wells] to discharge [his] responsibilities with reasonable care.' "[11]

## C. *Beesley's motion for summary judgment*

Beesley filed a motion for summary judgment in May 2019, presenting an argument similar to Smoothreads's argument in its motion for summary adjudication. In a supporting brief, Beesley stated that he is the chief executive officer of Smoothreads and acknowledged that Smoothreads was

---

[10] In his opposition, McKenna presented evidence that, at the time of the accident, Wells did not have a valid driver's license or auto insurance. In addition, McKenna presented evidence that Wells's driving history included three suspensions for three separate convictions of driving under the influence. In addition, McKenna lodged excerpts of Wells's deposition in which Wells stated that he suffered from bipolar disorder and that he had "trouble with alcohol."

[11] In the omitted citations, Smoothreads cited to facts contained in its separate statement of undisputed material facts, filed concurrently with its motion.

6

the owner of a vehicle involved in the accident. However, Beesley stated that Wells was "never employed by [Smoothreads] and never performed work of any kind for [Smoothreads]." Beesley did acknowledge that Beesley had "used Mr. Wells for various . . . handyman jobs at his residence."

Beesley maintained that he could not be liable for negligent entrustment because, even assuming that Wells was the operator of the Smoothreads vehicle involved in the accident and that Beesley gave Wells permission to drive the vehicle, "Beesley had no knowledge that Mr. Wells was incompetent [to] drive the subject vehicle." Specifically, Beesley argued, "At no time was [Beesley] aware that . . . Wells did not have a valid driver's license, or that he had a history of alcohol-related driving incidents." Beesley also stated, "Wells never told Mr. Beesley [t]hat he was in any way incompetent to operate a vehicle."

D. *McKenna's oppositions*

In his oppositions to Beesley's and Smoothreads's motions, McKenna argued that "Beesley, president [and chief executive officer] of Smoothreads, negligently hired, supervised, or retained . . . Wells, and knew or should have known that . . . Wells was incompetent or unfit to drive [Smoothreads's vehicle]."[12] (Boldface & underscore omitted.) McKenna argued in part:

> "Beesley negligently hired, negligently supervised, and negligently retained . . . Wells. [Citation.] . . . Wells did not have a valid driver's license, nor auto insurance coverage. [Citation.] Also, Wells['s] driving history included [three] suspensions for [three] separate [driving under the influence] criminal convictions. . . . Beesley, [president], and [chief executive officer] of Smoothreads, did not ask Wells, his employee, whether he had a valid driver's

---

12    Although McKenna filed separate oppositions to the two motions, the oppositions were identical in many respects, including the language quoted in the text.

7

license. [Citation.] Beesley did not ask Wells, his employee, before Wells drove, or after, whether he had auto insurance coverage. [Citation.]

"Beesley did not ask Wells before he drove, or after, about Wells['s] driving history or verify Wells['s] driving history in the State of California which contained multiple suspensions, including [three driving under the influence] criminal convictions. [Citation.] Wells worked at Beesley's home throughout the months of June, July and August of 2017. [Citation.] Beesley had multiple opportunities while working to ask Wells if he had a valid driver's license and, if not, any driving restrictions or suspensions. [Citation.] As a matter of fact, the State of California would not license Wells as a competent driver and suspended him from driving on [three] occasions. The State of California knew and treated Wells as an incompetent driver. Beesley knew or should have known that Wells was being negligently supervised, negligently retained, and incompetent to drive [Smoothreads's vehicle]. [Citation.]"[13]

E. *The trial court's order granting Smoothreads's motion for summary adjudication and granting Beesley's motion for summary judgment*

After Smoothreads and Beesley filed replies to McKenna's oppositions, the trial court held a hearing on the motions. The court subsequently entered an order on September 6, 2019 granting both Smoothreads's motion for summary adjudication and Beesley's motion for summary judgment. The trial court reasoned in part:

"Neither Beesley nor Smoothreads had any actual knowledge of any facts that would have placed either on notice of Wells'[s] lack of licensure or otherwise unfitness to

---

[13] In the omitted citations, McKenna also cited to facts contained in his separate statements of undisputed material facts, filed concurrently with his oppositions. In particular, as noted in footnote 10, *ante*, McKenna presented evidence of Wells's incompetency to drive a motor vehicle, including Wells's lack of a valid driver's license.

8

operate a motor vehicle. *See Richards v. Stanley* (1954) 43 Cal.2d 60, 63 [(*Richards*)] ('[l]t has generally been held that the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person in the absence of facts putting the owner on notice that the third person is incompetent to handle it.'). Accordingly, neither Beesley nor Smoothreads had a legal duty to conduct any investigation or make any inquiry regarding Wells'[s] fitness to operate a motor vehicle.

"The question whether a legal duty exists is to be resolved by the court, not a jury. [Citation.] 'Duty, being a question of law, is particularly amenable to resolution by summary judgment.' [Citation.]

"McKenna cites no persuasive legal authority to the effect that an owner entrusting his vehicle to a third party faces liability for negligent entrustment when, not knowing any facts to put him on notice of the third party's unfitness, simply fails to conduct an investigation to determine fitness. This would create a new legal duty in California, and this court is not inclined to make new law. . . .

"Finally, McKenna's reliance upon [section] 14606 is misplaced. In *Dodge Center v. Superior Court* (1988) 199 Cal.App.3d 332, 338 [(*Dodge Center*)], the court stated:

" [']*Section 14606, like the common law cause of action for entrustment, requires* a *showing of knowledge of the incapacitating condition which under the statute is lack of* a *license.* ***In the absence of such knowledge there is no duty to inquire.*** [Emphasis added.][']"

F. *The trial court's judgments*

The trial court entered a judgment in favor of Beesley on the basis of its summary judgment order on October 30, 2019. On February 28, 2020, the trial court entered a judgment in favor of Smoothreads. The trial court's February 28 judgment states in relevant part:

9

"On or about September 6, 2019, the Court granted [Smoothreads's] Motion for Summary Adjudication, ruling that Smoothreads'[s] liability, if any, to [McKenna] for his causes of action of General Negligence and Motor Vehicle Negligence was limited to $15,000 pursuant to the permissive use statute ([§] 17151). [McKenna] has since waived his right to collect under a permissive use claim."[14]

G. *The appeals*

In December 2019, McKenna timely filed an appeal from the October 30, 2019 judgment in favor of Beesley, and in March 2020, McKenna timely filed an appeal from the February 28, 2020 judgment in favor of Smoothreads.

III.

DISCUSSION

*The trial court erred in granting Smoothreads's motion for summary adjudication and Beesley's motion for summary judgment*

McKenna contends that the trial court erred in granting Smoothreads's motion for summary adjudication and Beesley's motion for summary judgment. Specifically, McKenna claims that a reasonable jury could find

---

[14]    Section 17150 provides, "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner." However, an owner's liability under section 17150 is limited to $15,000 per person in any one accident. (See § 17151). A common law cause of action for "negligent entrustment is an independent tort" that may be brought separately from a section 17150 cause of action. (*Bayer-Bel v. Litovsky* (2008) 159 Cal.App.4th 396, 400.)

Smoothreads states in its brief, "As the parties have stipulated, [McKenna] is entitled to $15,000 pursuant to . . . section 17151, and Smoothreads has already paid this amount. [McKenna] can only be entitled to more if he has a valid claim for negligent entrustment."

10

Smoothreads liable for negligent entrustment and Beesley liable for negligent hiring.

We first provide an overview of the relevant legal principles, before addressing in detail McKenna's claims as to each defendant.

A. *The law governing summary adjudication and summary judgment*

" 'Summary judgment and summary adjudication provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citations.] A defendant moving for summary judgment or summary adjudication may demonstrate that the plaintiff's cause of action has no merit by showing that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action.' " (*Camacho v. Target Corp.* (2018) 24 Cal.App.5th 291, 296 (*Camacho*).)

A party is entitled to summary adjudication of a cause of action if there is no triable issue of material fact and the party is entitled to judgment as a matter of law on that cause of action. (Code Civ. Proc., § 437c, subd. (f)(1), (2).) A trial court shall grant summary judgment if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," (*id.*, subd. (c)), with respect to the entire "action." (*Id.*, subd. (a).)

" 'On appeal, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling [regarding summary adjudication or summary judgment], applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' " '

11

[Citation.] Our task is to determine whether a triable issue of material fact exists." (*Camacho, supra*, 24 Cal.App.5th at p. 297.)

B. *Substantive law*

1. *The torts of negligent entrustment and negligent hiring*

a. *Negligent entrustment*

"California is one of several states [that] recognizes the liability of an automobile owner who has entrusted a car to an incompetent, reckless, or inexperienced driver" (italics omitted) through the tort of negligent entrustment. (*Allen v. Toledo* (1980) 109 Cal.App.3d 415, 420.)

In *Ghezavat v. Harris* (2019) 40 Cal.App.5th 555, 559, the court outlined the tort of negligent entrustment, where the object entrusted is a motor vehicle:

> "Negligent entrustment is a common law liability doctrine, which arises in numerous factual contexts. [Citation.] In cases involving negligent entrustment of a vehicle, liability ' "is imposed on [a] vehicle owner or permitter because of his own independent negligence and not the negligence of the driver." ' [Citations.] ' "Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been known by the owner." ' [Citation.]; accord, Rest.2nd Torts, § 308 ['It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others'].)"

CACI No. 724 outlines the elements of the tort of negligent entrustment of a motor vehicle:

"1. That [*name of driver*] was negligent in operating the vehicle;

"2. That [*name of defendant*] [owned the vehicle operated by [*name of driver*]/had possession of the vehicle operated by [*name of driver*] with the owner's permission];

"3. That [*name of defendant*] knew, or should have known, that [*name of driver*] was incompetent or unfit to drive the vehicle;

"4. That [*name of defendant*] permitted [*name of driver*] to drive the vehicle; and

"5. That [*name of driver*]'s incompetence or unfitness to drive was a substantial factor in causing harm to [*name of plaintiff*]."[15]

b. *Negligent hiring*

"California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee.[16] [Citation.] Liability is based upon the facts that the

---

[15] (See *Jeld-Wen, Inc. v. Superior Court* (2005) 131 Cal.App.4th 853, 864 [noting that CACI No. 724 outlines elements of negligent entrustment of motor vehicle claim].)

[16] California law also provides that a person "who negligently fails to employ a competent and careful *contractor* may be liable for injuries caused by the contractor's failure to exercise due care." (*Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 549, disapproved on other grounds by *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, italics added.) In *Camargo*, the Supreme Court concluded that "an *employee* of an independent contractor [is barred] from bringing a negligent hiring action against the hirer of the contractor." (*Camargo, supra,* at p. 1238, italics added [noting that section 411 of the Restatement Second of Torts provides that "[a]n employer is subject to liability for physical harm to *third persons* caused by his failure to exercise reasonable care to employ a competent and careful

13

employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054.)

"A claim that an employer was negligent in hiring or retaining an employee-driver rarely differs in substance from a claim that an employer was negligent in entrusting a vehicle to the employee. Awareness, constructive or actual, that a person is unfit or incompetent to drive underlies a claim that an employer was negligent in hiring or retaining that person as a driver. (See Judicial Council of Cal. Civ. Jury Instns. (2010) CACI No. 426.)[17] That same awareness underlies a claim for negligent

---

contractor," (*Camargo*, at p. 1241) but concluding that "an *employee* of a contractor should be barred from seeking recovery from the hirer under the theory of negligent hiring set forth in section 411," (*id*. at p. 1244, italics added)].) It is undisputed that McKenna is *not* an employee of Beesley, and thus *Camargo* has no relevance to this case.

17    CACI No. 426 (2010 ed.) provided:

> "[*Name of plaintiff*] claims that [he/she] was harmed by [*name of employee*] and that [*name of employer defendant*] is responsible for that harm because [*name of employer defendant*] negligently [hired/ supervised/ [or] retained] [*name of employee*]. To establish this claim, [*name of plaintiff*] must prove all of the following:

> "1. That [*name of employee*] was [unfit/ [or] incompetent] to perform the work for which [he/she] was hired;

> "2. That [*name of employer defendant*] knew or should have known that [*name of employee*] was [unfit/ [or] incompetent] and that this [unfitness/ [or] incompetence] created a particular risk to others;

> "3. That [*name of employee*]'s [unfitness/ [or] incompetence] harmed [*name of plaintiff*]; and

14

entrustment.  (See CACI No. 724.)  In a typical case . . . the two claims are functionally identical."  (*Diaz, supra*, 51 Cal.4th at p. 1157.)

2.  *The relationship of the common law to statutory law in this context*

In determining the scope of common law tort duties pertaining to those who allow unlicensed or unfit drivers to drive a vehicle, California courts have long looked to statutory law.  (See, e.g., *Philadelphia Indemnity Ins. Co. v. Montes-Harris* (2006) 40 Cal.4th 151, 161 (*Philadelphia Indemnity Ins. Co.*) ["As courts [considering common law claims for negligent entrustment] have long recognized, the statutory provisions addressing vehicle use by unlicensed drivers represent a legislatively expressed public policy to provide protection to members of the public upon the streets and highways"]; *Richards, supra*, 43 Cal.2d at p. 63 [noting the relevance of statutory law in determining "the scope of the duty of the owner of an automobile to control his property for the protection of persons on the public streets"]; *Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 709 (*Osborn*) [observing that a statute "prohibits a rental car agency from renting to unlicensed drivers," and concluding that "[a] rental car agency may therefore be liable for negligently entrusting a car to an unlicensed driver"]; *Dodge Center, supra,* 199 Cal.App.3d at pp. 338–342 [discussing California statutory law pertaining to unlicensed drivers in determining whether a seller of a motor vehicle has a "statutory or common law duty to investigate a buyer's driver's license" (*id.* at p. 336)]; *Hartford Accident & Indemnity Co. v. Abdullah* (1979) 94 Cal.App.3d 81, 92 (*Hartford Accident & Indemnity Co.*) [in considering negligent entrustment of a vehicle cause of action, stating, "[t]wo sections of the Vehicle Code are pertinent . . . in suggesting the standard of care

---

"4. That [*name of employer defendant*]'s negligence in [hiring/ supervising/ [or] retaining] [*name of employee*] was a substantial factor in causing [*name of plaintiff*]'s harm."

15

required"]; *Owens v. Carmichael's U-Drive Autos, Inc.* (1931) 116 Cal.App. 348, 352 (*Owens*) [stating that "violation of the statute [pertaining to entrusting a car to an unlicensed person] is material," in determining liability for negligent entrustment of vehicle claim].)

     3. *Relevant statutes*

The Vehicle Code contains two statutes pertaining to unlicensed drivers that are relevant to our determination of the scope of the defendants' duties in this case.

Section 14604, subdivision (a) provides:

> "No owner of a motor vehicle may knowingly allow another person to drive the vehicle upon a highway unless the owner determines that the person possesses a valid driver's license that authorizes the person to operate the vehicle. For the purposes of this section, an owner is required only to make a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle. An owner is not required to inquire of the department whether the prospective driver possesses a valid driver's license."

Section 14606, subdivision (a) provides:

> "A person shall not employ, hire, knowingly permit, or authorize any person to drive a motor vehicle owned by him or her or under his or her control upon the highways unless that person is licensed for the appropriate class of vehicle to be driven."

C. *The trial court erred in granting judgment as a matter of law in favor of Smoothreads on McKenna's negligent entrustment cause of action*

McKenna argues that the trial court erred in granting judgment as a matter of law in favor of Smoothreads on his negligent entrustment cause of action. McKenna contends, "In light of the [defendants'] legal duty to inquire

16

into whether Wells had a valid driver's license, a reasonable jury could find Smoothreads liable for negligent entrustment." (Boldface & some capitalization omitted). Specifically, McKenna contends that a jury could reasonably find that Smoothreads breached its duty to determine whether Wells had a valid driver's license and could rely on this finding in determining that Smoothreads had constructive knowledge that Wells was incompetent or unfit to drive. Thus, McKenna maintains that the trial court erred in granting judgment as a matter of law for Smoothreads on McKenna's negligent entrustment cause of action on the ground that McKenna would be unable to establish the constructive knowledge element of that cause of action.

1. *An owner of a motor vehicle has a duty to make a reasonable effort or inquiry to determine whether a prospective driver has a valid driver's license before allowing the prospective driver to operate the owner's vehicle; an owner who breaches this duty, and permits an unlicensed driver to drive the owner's vehicle, may be found to have constructive knowledge of the driver's incompetence to drive for purposes of a claim for negligent entrustment of a motor vehicle*

   a. *Negligent entrustment of a motor vehicle*

In California, " 'one who places or entrusts his [or her] motor vehicle in the hands of one whom he [or she] knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable for an injury inflicted by the use made thereof by that driver, provided the plaintiff can establish that the injury complained of was proximately caused by the driver's disqualification, incompetency, inexperience or recklessness. . . . [¶] . . . [¶]  Under the theory of "negligent entrustment," liability is imposed on [the] vehicle owner or permitter because of his [or her] own independent negligence and not the negligence of the driver, in the event plaintiff can prove that the injury or death resulting therefrom was

17

proximately caused by the driver's incompetency." (*Syah v. Johnson* (1966) 247 Cal.App.2d 534, 539 (*Syah*).)

However, at common law, "[*i*]*n the absence of . . . a statute . . .* it has generally been held that the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person in the absence of facts putting the owner on notice that the third person is incompetent to handle it." (*Richards, supra*, 43 Cal.2d at p. 63, italics added.)  The tort of negligent entrustment of a motor vehicle ordinarily required "demonstration of *actual* knowledge of facts showing or suggesting the driver's incompetence." (*Dodge Center, supra*, 199 Cal.App.3d at p. 341, italics added.)

California statutory law has long provided that a factfinder may find that an owner should have known of the prospective driver's incompetence if the owner knows that the prospective driver is not appropriately licensed.  In *Owens, supra*, 116 Cal.App. 348, the Court of Appeal considered whether a person injured by an unlicensed driver could maintain a cause of action for negligent entrustment against the owner of the vehicle.  Citing a predecessor statute to section 14606, the *Owens* court concluded that the injured person could make out a prima facie case against the owner, given evidence that the owner knew that the driver was unlicensed, reasoning in part:

> "[Former section 76 of the California Vehicle Act[18]] now requires the examination of all persons applying for

---

[18]     Former section 76 of the California Vehicle Act provided:

> "Unlawful to employ unlicensed chauffeur.  No person shall employ for hire as a chauffeur of a motor vehicle, any person not licensed as in this act provided.  No person shall authorize or knowingly permit a motor vehicle owned by

licenses, and an operator's license is no longer merely a means of identification but is in effect a certificate evidencing the fact that the holder had demonstrated his competency. Under these circumstances, we believe that the violation of the statute is material. [Citations.] The distinction between violations of statutes which are designed for the protection of the public and violations of statutes which have no such purpose is pointed out in *Austin v. Rochester Folding Box Co.*, 111 Misc. 292. In our opinion, where an examination is required to test the competency of the applicant before the issuance of an operator's license and it is provided by statute that no person shall knowingly permit his motor vehicle to be driven by an unlicensed person, a showing of a violation of the statute by the owner makes out a prima facie case against him in favor of a person who has sustained injury through the negligence of such unlicensed driver. (*Correira v. Liu*, 28 Haw., 145.) As is said in the concurring opinion in that case at page 154, 'The fact that Miller was unlicensed is evidence prima facie in the eyes of the law that Miller was incompetent and that Correira committed a breach of his common–law duty not to entrust his car to a driver who was known by him to be incompetent or who, under the circumstances, should have been known by him to be incompetent and was sufficient to put Correira upon inquiry as to Miller's competency or incompetency.' " (*Owens, supra*, 116 Cal.App. at pp. 351–352, some italics omitted.)

The importance of statutory law in determining the scope of a common law liability for negligent entrustment was also apparent in both *Dodge Center, supra*, 199 Cal.App.3d 332 and *Osborn, supra*, 205 Cal.App.3d 703. In *Dodge Center*, the Court of Appeal concluded that a seller of a motor vehicle could not be held liable for negligent entrustment by plaintiffs who

him or under his control, to be driven by any person who has no legal right to do so or in violation of the provisions of this act." (Stats. 1923, ch. 266, § 76.)

19

were injured in a motor vehicle accident with the unlicensed purchaser of the vehicle. (*Dodge Center, supra*, at pp. 335, 342.) The *Dodge Center* court reasoned that the sellers "owed no legal duty" to plaintiffs "to inquire into [the purchaser's] driving record before selling him a vehicle." (*Id.* at p. 342.) The *Dodge Center* court noted that section 14608 "imposes . . . a duty [of inquiry] on one who *rents* a motor vehicle, requiring inspection of the driver's license of the person to whom the vehicle is to be rented and comparison of the signature on the license with that of the person seeking to rent." (*Id.* at pp. 338–339.) In contrast, the *Dodge Center* court noted, "no statute imposes on such a retailer a duty to inquire as to the purchaser's license status." (*Id.* at p. 338.) The *Dodge Court* reasoned that, "the Legislature could readily have imposed a duty of inquiry upon motor vehicle sellers, as it did, for example, upon those who rent motor vehicles, in section 14608." (*Id.* at p. 342.)

Just a few months later in *Osborn*, the Court of Appeal succinctly stated that a rental car agency's violation of section 14608 could subject the agency to common law liability for negligent entrustment:

> "[S]ection 14608 prohibits a rental car agency from renting to unlicensed drivers. . . . A rental car agency may therefore be liable for negligently entrusting a car to an unlicensed driver." (*Osborn, supra*, 205 Cal.App.3d at p. 709.)

20

b. *Section 14604*[19]

In 1994, approximately six years after the Court of Appeal decisions in *Dodge Center* and *Osborn*, the Legislature enacted section 14604, subdivision (a), which specifically imposed a duty of inquiry on *all* owners of motor vehicles who permissively allow another to drive their vehicles to determine that the permissive driver has a valid driver's license. (Stats. 1994, ch. 1221, § 14.) As noted in part III.B.3, *ante*, section 14604, subdivision (a) prohibits an "owner of a motor vehicle," from "knowingly allow[ing] another person to drive the vehicle . . . *unless the owner determines*

_____

[19] While McKenna raises the applicability of section 14604 on appeal, his trial counsel failed to cite section 14604, subdivision (a) in the trial court. However, we may consider the statute's applicability to this case for the first time on appeal for the following reasons.

First, McKenna's opposition to Smoothreads's motion for summary judgment did present the *argument* that Smoothreads had a duty to inquire as to Wells's license status. (Compare with *Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335–336 (*Noe*) ["We generally will not consider an *argument* 'raised in an appeal from a grant of summary judgment . . . if it was not raised below and requires consideration of new factual questions' "])

Further, even if it could be said that McKenna is presenting a new issue on appeal, a court reviewing a summary judgment "*may* . . . consider a newly[-]raised issue 'when [it] involves purely a legal question which rests on an uncontraverted record which could not have been altered by the presentation of additional evidence.' " (*Noe, supra*, at p. 336, italics added.) "The existence of a legal duty is a question of law for the court" (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1188), as is the interpretation of section 14604 (see, e.g., *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 ["the issue here involves the interpretation of a statute, a question of law"]), and defendants present no argument that our analysis of either issue could have been altered by the presentation of additional evidence.

Finally, defendants do not argue in their briefing that McKenna forfeited reliance on section 14604, subdivision (a) by failing to cite the statute in the trial court. Under these circumstances, we conclude that it is appropriate to consider the applicability of section 14604, subdivision (a) to McKenna's claim.

21

*that the person possesses a valid driver's license that authorizes the person to operate the vehicle.*" (Italics added.) The statute further specifies that the owner is required "to *make a reasonable effort or inquiry* to determine whether the prospective driver possesses a valid driver's license before allowing him or her to operate the owner's vehicle." (*Ibid.*, italics added.) Thus, section 14604, subdivision (a) expressly provides that an owner has a legal duty to make a "reasonable effort or inquiry," into a prospective driver's license status before allowing the prospective driver to operate the owner's vehicle.[20]

Case law discussing section 14604 describes an owner's duty in a manner consistent with its text. (See *Philadelphia Indemnity Ins. Co., supra*, 40 Cal.4th at p. 161 ["section 14604 prohibits an owner of a motor vehicle from knowingly allowing another person to drive its vehicle without first determining that the person possesses a valid and appropriate driver's license"]; *Smith v. Santa Rosa Police Dept.* (2002) 97 Cal.App.4th 546, 563

---

[20]     Section 14604, *subdivision (b)* provides:

> "A rental company is deemed to be in compliance with subdivision (a) if the company rents the vehicle in accordance with Sections 14608 and 14609."

Section 14608 provides additional requirements pertaining to those who rent motor vehicles to members of the public, including, as noted by the courts in *Dodge Center, supra*, 199 Cal.App.3d at pages 338–339 and *Osborn, supra*, 205 Cal.App.3d at page 709, footnote 3, prohibiting the renting of a motor vehicle unless "[t]he person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared either the signature thereon with that of the person to whom the vehicle is to be rented or the photograph thereon with the person to whom the vehicle is to be rented." (§ 14608, subd. (a)(2).) Section 14609 contains record keeping requirements related to the license inspection requirements of section 14608.

22

(*Smith*) [describing "the mandate of section 14604 that the registered and legal owner of the vehicle must inquire about the license status of the driver to whom the owner lends the vehicle" and referring to "section 14604's duty of inquiry"[21] (*id.* at p. 565)].)

    c.   *The effect of section 14604 on common law liability for negligent entrustment of a motor vehicle*

In considering the effect of the enactment of section 14604, subdivision (a) on the common law tort of negligent entrustment, we begin by observing that the *Philadelphia Indemnity Ins. Co.* court noted that "the enactment of section 14604 in 1994 was part of an overall legislative effort to address the serious public safety danger posed by unlicensed drivers and drivers with suspended or revoked licenses." (*Philadelphia Indemnity Ins. Co., supra*, 40 Cal.4th at p. 162; *Smith, supra*, 97 Cal.App.4th at p. 565 [section 14604 was part of a legislative effort "aimed at reducing the incidence of unlicensed driving and punishing such behavior"].)

As part of this "overall legislative effort" (*Philadelphia Indemnity Ins. Co., supra*, 40 Cal.4th at p. 162), the Legislature adopted, as statutory law, the following findings, detailing these significant public safety dangers:

> "The Legislature finds and declares all of the following:
>
> "(a) Driving a motor vehicle on the public streets and highways is a privilege, not a right.
>
> "(b) Of all drivers involved in fatal accidents, more than 20 percent are not licensed to drive. A driver with a suspended license is four times as likely to be involved in a fatal accident as a properly licensed driver.

---

[21]    To be precise, section 14604, subdivision (a) specifies a duty of "reasonable effort or inquiry." However, for purposes of brevity, we employ the *Smith* court's "duty of inquiry" (*Smith, supra*, 97 Cal.App.4th at p. 565) shorthand description of the statutory requirement through this opinion.

"(c) At any given time, it is estimated by the Department of Motor Vehicles that of some 20 million driver's licenses issued to Californians, 720,000 are suspended or revoked. Furthermore, 1,000,000 persons are estimated to be driving without ever having been licensed at all.

"(d) Over 4,000 persons are killed in traffic accidents in California annually, and another 330,000 persons suffer injuries.

"(e) Californians who comply with the law are frequently victims of traffic accidents caused by unlicensed drivers. These innocent victims suffer considerable pain and property loss at the hands of people who flaunt [*sic*] the law.  The Department of Motor Vehicles estimates that 75 percent of all drivers whose driving privilege has been withdrawn continue to drive regardless of the law."[22]
(§ 14607.4)

In *Smith*, the court observed that, although section 14604 is a *criminal* statute,[23] the statute could potentially serve as the basis for a *negligence* finding in a *civil* action:

----

[22]    The findings were enacted pursuant to Statutes 1994, chapter 1133, section 11, companion legislation to Statutes 1994, chapter 1221, section 14, which enacted section 14604.  (See *Smith, supra*, 97 Cal.App.4th at p. 563 [describing the two statues as "companion pieces of legislation, aimed at reducing the harm caused by drivers with suspended, revoked or no licenses"].)

[23]    Violation of section 14604 is a misdemeanor.  Section 40000.11 provides in relevant part:

> "A violation of any of the following provisions is a misdemeanor, and not an infraction:
>
> "[¶] . . . [¶]
>
> "(m) Section 14604, relating to unlawful use of a vehicle."

"[S]ection 14604 is a criminal statute. . . . [S]ection 14604 imposes criminal liability upon an owner who knowingly allows another person to drive the owner's vehicle without first determining the driver possesses a valid driver's license. . . . *That standard for criminal liability could conceivably furnish a basis for a negligence finding in a civil action for damages against an owner who did not make a reasonable effort to determine whether the prospective driver possessed a valid license before allowing the driver to operate the owner's vehicle where injuries were proximately caused thereby.* (See Evid. Code, § 669[24]; see generally 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts §§ 818, 819, pp. 170–173 [violation of a criminal statute may constitute negligence per se].)" (*Smith, supra,* 97 Cal.App.4th at p. 565, italics added.)[25]

While we do not consider here whether a violation of section 14604 constitutes negligence per se,[26] we agree with the opinion in *Smith* insofar

---

[24] Evidence Code section 669 outlines the requirements for establishing negligence per se.

[25] In *Smith*, the court considered a question of statutory interpretation related to the relationship between section 14604 and section 14602.6, which allows for the impounding of a motor vehicle driven by an unlicensed driver and provides an owner with a hearing to " 'consider any mitigating circumstances attendant to[ ] the storage,' " (*Smith, supra,* 97 Cal.App.4th at p. 549.) Specifically, the *Smith* court considered whether section 14602.6 conditions "the operation of the mitigating circumstances exception to situations where the owner has made a reasonable inquiry as to the licensed status of the driver before lending the vehicle." (*Smith, supra,* at p. 550.) While the *Smith* court's interpretation of section 14602.6 is not germane to the present appeal, the *Smith* court's observations as to the relationship between section 14604 and a civil action for damages based on negligence, are relevant.

[26] " '[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence,' " (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th

as it can be interpreted to state that the enactment of section 14604, subdivision (a) is relevant in determining the scope of an owner's duty for purposes of a claim of negligent entrustment of a motor vehicle. Just as the court in *Owens* concluded that negligent entrustment liability may be premised on a violation of a statutory predecessor to section 14606 (*Owens, supra*, 116 Cal.App. at p. 351), and the *Osborn* court stated that negligent entrustment liability may be premised on a violation of section 14608 (*Osborn, supra*, 205 Cal.App.3d at p. 709), we conclude, for reasons explained further below, that an owner who violates section 14604 *may* be liable for negligent entrustment.

It is true, as Smoothreads points out in its brief, that section 14604, subdivision (a) establishes an affirmative duty to inquire regarding a prospective driver's *license status*, while a negligent entrustment claim requires either actual or constructive knowledge of a prospective driver's *incompetenc*e or *lack of fitness* to drive. (Compare § 14604, subd. (a) ["No owner of a motor vehicle may knowingly allow another person to drive the vehicle upon a highway unless the owner determines that the person possesses a valid driver's *license* that authorizes the person to operate the vehicle" (italics added)] with CACI No. 724 [listing as an element of a negligent entrustment cause of action "[t]hat [*name of defendant*] knew, or

---

516, 534). McKenna presents no argument on appeal concerning the doctrine of negligence per se, and we therefore have no occasion to consider its potential applicability in this case.

We also reject Smoothreads's characterization of McKenna's argument as "essentially a negligence per se, almost a strict liability, argument." McKenna's briefing makes clear that his argument is that "(1) constructive knowledge of an unlicensed driver puts an owner 'on inquiry [notice]' of incompetence; and (2) it is for [a] jury to determine under those circumstances whether the owner was negligent in permitting the driver to operate the vehicle." (Quoting *Syah, supra*, 247 Cal.App.2d at p. 545.)

26

should have known, that [*name of driver*] was *incompetent* or *unfit* to drive the vehicle" (some italics added)].)

However, a jury that finds that an owner failed to comply with the affirmative statutory duty to make a "reasonable effort or inquiry" (§ 14604, subd. (a)) into a prospective driver's *license* status could reasonably rely on that finding in determining that the owner should have known that the prospective driver "was *incompetent or unfit* to drive the vehicle."[27] (CACI No. 724, italics added; see e.g., *Hartford Accident & Indemnity Co., supra*, 94 Cal.App.3d at p. 92.) As the court in *Dodge Center* stated, "The fact that the driver is unlicensed makes a prima facie case of negligence in allowing him to drive the vehicle." (*Dodge Center, supra*, 199 Cal.App.3d at p. 341, fn. 3. [citing cases].)

In *Hartford Accident & Indemnity Co.*, the court considered whether a car dealer could be liable for negligent entrustment where the dealer made no inquiry into the license status of a prospective customer before allowing the prospective customer to test drive a vehicle. After citing former sections 14606 and 14608,[28] the *Hartford Accident & Indemnity Co.* court reasoned:

---

[27] Or, as McKenna states in his reply brief, "constructive knowledge of no license supports constructive knowledge of incompetence." (Italics omitted.)

[28] The *Hartford Accident & Indemnity Co.* court noted that former section 14606 provided in relevant part that " '(n)o person shall . . . knowingly permit or authorize the driving of a motor vehicle, owned by him or under his control, upon the highways by any person unless the person is then licensed for the appropriate class of vehicle to be driven,' " and that former section 14608 provided in relevant part, " '(n)o person shall rent a motor vehicle to another unless . . . [the] person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared the signature thereon with the signature of such person written in his presence.' " (*Hartford Accident & Indemnity Co., supra*, 94 Cal.App.3d at p. 92, quoting former §§ 14606, 14608.)

27

"Taken together, these sections attempt to ensure that only licensed drivers will operate vehicles on the streets and highways in this state; the protected class are members of the public using those streets and highways. We think it clear that 'ordinary care and skill' on the part of a used car dealer requires inquiry of persons wishing to test drive the dealer's cars as to whether or not they are validly licensed drivers. Those persons who cannot produce a valid license to operate such automobiles test drive at the dealer's peril." (*Hartford Accident & Indemnity Co., supra*, 94 Cal.App.3d at p. 92.)

Similarly, in this case, section 14604 reflects a further legislative effort to reduce the public safety dangers posed by unlicensed drivers, by requiring *all* owners of motor vehicles to exercise "reasonable effort or inquiry" (§ 14604, subd. (a)) into a prospective driver's license status before allowing the prospective driver to drive the owner's vehicle. (See *Philadelphia Indemnity Ins. Co., supra*, 40 Cal.4th at p. 161.) An owner who allows its vehicle to be driven without fulfilling his duty allows the unlicensed driver to drive the vehicle at the owner's peril.

Thus, given the enactment of "section 14604's duty of inquiry" (*Smith, supra,* 97 Cal.App.4th at p. 565),[29] the *Dodge Center* court's statement that,

---

[29] We are not persuaded by Smoothreads's argument, quoting *Dodge Center* and citing *Richards*, that "[t]o impose a 'duty of inquiry,' where there was no actual knowledge of unfitness, would 'not only be without precedent' but 'would also violate the general principle that it may be presumed that every person will obey the law.'" As the *Smith* court made clear, it is the *Legislature* that imposed the "duty of inquiry" (*Smith, supra*, 97 Cal.App.4th at p. 565) that we apply here, and section 14604 provides the legal "precedent," that was lacking in *Dodge Center*, *supra*, at 199 Cal.App.3d at page 342. As noted, section 14604 was enacted six years *after Dodge Center* was decided.

Further, while the *Richards* court stated that "[o]rdinarily . . . there is no duty to control the conduct of a third person so as to prevent him from causing harm to another" (*Richards, supra*, 43 Cal.2d at p. 65, italics added),

under California law, "there can be no liability [for negligent entrustment] unless permission to drive is given to one *known* to be unlicensed," is no longer correct.[30] (*Dodge Center, supra,* 199 Cal.App.3d at p. 339; citing *Johnson v. Casetta* (1961) 197 Cal.App.2d 272, 274 [sellers of motor vehicle could not be liable for negligent entrustment because sellers had no knowledge purchaser was "an inexperienced, incompetent and unlicensed driver," and "in the absence of any such knowledge, they had no legal duty or obligation to inquire"].)

We therefore conclude that a jury may reasonably find that an owner of a vehicle had constructive knowledge that a prospective driver was incompetent or unfit to drive if there is evidence from which the jury could reasonably find that the owner breached its section 14604 duty to inquire as to a prospective driver's license status and allowed an unlicensed driver to

---

the *Richards* court repeatedly emphasized that this was true only "*[i]n the absence of . . . a statute,*" establishing such duty. (*Id.* at p. 63, italics added; see *id.* at p. 65 ["[i]n the absence of [a] statute"]; *id.* at p. 67 ["in the absence of [a] statute"].) In this case, there is such a statute—section 14604.

[30] In fact, in our view, the *Dodge Center* Court's statement as to the requirement of *actual* knowledge on the part of the owner was not entirely correct at the time it was made. As noted in the text, in *Hartford Accident & Indemnity Co.,* the Court of Appeal concluded that a cause of action at common law for negligent entrustment of a motor vehicle had been properly stated against a car dealer who permitted an unlicensed driver to test drive a vehicle premised on the dealer's breach of the duty to *inquire* as to the driver's license status. (*Hartford Accident & Indemnity Co., supra,* 94 Cal.App.3d at p. 92.) The *Hartford Accident & Indemnity Co.* court specifically stated that "no one [from the dealership] asked [the driver] if he possessed a valid driver's license," (*id.* at p. 87) and there is nothing in the opinion suggesting that the dealer *knew* the driver was unlicensed. Accordingly, we are unpersuaded by Smoothreads's argument, citing *Dodge Center*, that an "unbroken line of authority requiring actual knowledge," of a driver's lack of a license is required in order for a plaintiff to prevail on a claim for negligent entrustment of a motor vehicle.

29

drive the owner's vehicle. We further conclude that a defendant/owner fails to meet its summary adjudication burden of establishing that a plaintiff cannot establish the constructive knowledge element of a negligent entrustment of a motor vehicle claim,[31] where there is evidence from which a jury could reasonably find that an owner of a vehicle breached its section 14604 duty and allowed an unlicensed driver to drive its vehicle.

For the reasons discussed below, we conclude that there is such evidence in this case.

2. *The trial court erred in granting judgment as a matter of law in favor or Smoothreads on the ground that McKenna would be unable to establish the constructive knowledge element of his negligent entrustment cause of action*

With respect to the evidence from which a reasonable jury could find that Smoothreads breached its section 14604 duty as the owner of a vehicle[32] to "make a reasonable effort or inquiry to determine whether the prospective driver possesses a valid driver's license before allowing him . . . to operate the owner's vehicle" (§ 14064, subd. (a)), McKenna presented evidence that Beesley[33] did not ask Wells whether he had a valid driver's license before permitting Wells to drive Smoothreads's vehicle. Specifically, McKenna lodged Wells's deposition testimony in which Wells was asked, "Did [Beesley]

---

[31]    As discussed in part III.A, *ante,* for "purposes of motions for summary judgment and summary adjudication . . . [a] defendant . . . has met his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action . . . cannot be established . . . ." (Code Civ. Proc., § 437c, subd. (p); see *Camacho, supra,* 24 Cal.App.5th at p. 296 [summarizing summary judgment burdens].)

[32]    It is undisputed that Smoothreads owned the vehicle in question.

[33]    Smoothreads does not dispute that Beesley acted on its behalf.

30

ever request any driving information from you about whether you had DUI convictions, whether you had a suspended license or whether you even had a valid license?" Wells responded, "No." McKenna lodged another portion of Wells's deposition, during which the following colloquy occurred:

> "Q: Did you tell the Beesleys you didn't have a driver's license?
>
> "A: They never asked.
>
> "Q: Did you tell them?
>
> "A: I didn't tell them because they never asked."

Based on this testimony, a reasonable jury could find that Smoothreads[34] failed to make "a reasonable effort or inquiry to determine whether [Wells] possesse[d] a valid driver's license before allowing him . . . to operate [Smoothreads's] vehicle." (§ 14604, subd. (a).)

Smoothreads's argument to the contrary is not persuasive. Smoothreads argues:

> "If someone drives their car to your house one day, and asks to borrow your car the next, you do not have reason to suspect they are unlicensed or an unfit driver. Even less if that someone is an adult whose job (here, contractor) is commonly understood to require use of a vehicle."

Section 14604, subdivision (a) does not condition its applicability on instances in which an owner has "reason to suspect," that a prospective driver does not have a license. Rather, as recounted throughout this opinion, the statute mandates, without qualification, that the owner "make a reasonable effort or inquiry," into the prospective driver's license status

---

[34] Smoothreads does not contend that someone other than Beesley acted on its behalf with respect to the Smoothreads's vehicle in determining Wells's license status or competency to drive.

31

before allowing the prospective driver to use the owner's vehicle. (§ 14604, subd. (a).) In light of the evidence discussed above, we conclude that a jury could reasonably find that Smoothreads did not satisfy its duty to make "a reasonable effort or inquiry," to determine whether Wells had a valid driver's license before allowing Wells to drive Smoothreads's vehicle.[35]

With respect to whether there is evidence that Smoothreads allowed an unlicensed driver to drive its vehicle, Smoothreads conceded for purposes of its summary adjudication motion that it permitted Wells to drive its vehicle that was involved in the accident, and it is undisputed that Wells did not possess a valid driver's license at the time of the accident.

Accordingly, we conclude that the jury could reasonably find that Smoothreads had constructive knowledge that Wells was incompetent or unfit to drive and that Smoothreads allowed an unlicensed driver to drive its vehicle. We therefore further conclude that the trial court erred in granting judgment as a matter of law because Smoothreads did not demonstrate that McKenna would be unable to establish the constructive knowledge element of his negligent entrustment cause of action against it.[36]

---

[35] Stated differently, Smoothreads did not establish that McKenna would be unable to prove that Smoothreads breached its duty under section 14604.

[36] McKenna and Smoothreads both make arguments pertaining to a separate element of McKenna's negligent entrustment claim against Smoothreads, i.e., whether Wells's incompetence or unfitness to drive was a substantial factor in causing harm to McKenna (i.e., proximate cause element). For example, McKenna argues, "[A] reasonable jury could find that Smoothreads'[s] breach of its duty to inquire into Wells' licensure status was the 'but for' cause of the collision." Smoothreads argues, "The accident was not caused by Wells's lack of a license."

Smoothreads did not move for summary adjudication on the ground that McKenna would be unable to prove the proximate cause element of his negligent entrustment cause of action. On the contrary, the sole basis on

D.  *The trial court erred in granting judgment as a matter of law in favor of Beesley on McKenna's negligent hiring cause of action*

McKenna claims that the trial court erred in granting judgment as a matter of law in favor of Beesley on McKenna's negligent hiring claim. Specifically, McKenna argues that the trial court erred in concluding that McKenna could not establish that Beesley knew or should have known that Wells was unfit or incompetent to drive, as required to prove a negligent hiring claim.

1.  *The precise nature of the appellate claim at issue*

At the outset, we clarify our understanding of the nature of the appellate claim at issue. While McKenna correctly states that a negligent *hiring* claim technically is a "separate cause of action," from a negligent *entrustment* claim, he notes the close relationship between the two causes of action, stating, "In the context of entrusting a vehicle to a hired worker, a claim of negligent hiring is generally equivalent to a claim of negligent entrustment" (italics omitted). (Citing *Diaz, supra*, 51 Cal.4th at p. 1157; see *ibid.* [negligent hiring and negligent entrustment "claims are functionally identical" in this context]; see also *ibid.* [referring to a single "*claim* against the employer—for negligent entrustment, hiring, or retention" (italics added)].) Negligent hiring in this context and negligent entrustment of a

---

which Smoothreads sought summary adjudication of McKenna's negligent entrustment cause of action was its contention that "[McKenna] [cannot] present any triable issue of fact to demonstrate the actual or constructive knowledge required to prevail on a negligent entrustment theory." Further, the trial court granted Smoothreads's motion for summary adjudication solely on the constructive knowledge element and did not discuss proximate cause in any manner in its ruling. Thus, we have no occasion to consider the parties' contentions as to the proximate cause element of McKenna's negligent entrustment cause of action.

motor vehicle are both premised on "[a]wareness [by the defendant], constructive or actual, that a person is unfit or incompetent to drive."  (*Ibid.*)

Thus, we understand McKenna to be arguing that there is a triable issue of fact as to whether Beesley may be liable for negligent *hiring* based on Beesley's allegedly wrongful act of *entrusting* a vehicle to Wells.[37] Specifically, McKenna claims that the trial court erred in concluding that McKenna would be unable to establish that "Beesley knew or should have known (A) that Wells was unfit or incompetent to drive and (B) that this unfitness or incompetence created a particular risk to others."  (Quoting CACI. No. 426 [outlining the elements of a claim for negligent hiring].)[38]

---

[37]     Our understanding of McKenna's claim is further supported by the fact that McKenna does not seek to hold Beesley liable for any allegedly negligent act *other* than Beesley's alleged negligence in entrusting Wells with a vehicle. Further, we analyze Beesley's liability solely as the hirer and not as the person through whom Smoothreads, the owner of the vehicle in question, acted.

[38]     The close relationship between negligent *hiring* and negligent *entrustment* theories of liability against Beesley is further supported by the fact that neither the allegations of McKenna's complaint, nor Beesley's motion for summary judgment, nor the trial court's order granting summary judgment draw clear distinctions between negligent *hiring* and negligent *entrustment* theories of liability with respect to Beesley.  (See pt. II.A, C, E, *ante.*)  Thus, as we state in the text, we understand McKenna to be arguing that Beesley may be liable for negligent *hiring* based on his act of hiring Wells and wrongfully *entrusting* a vehicle to Wells.

2. *A person who hires another and permits that person to drive a vehicle under the hirer's control has a duty to make a reasonable effort or inquiry to determine whether the hiree has a valid driver's license; a hirer who breaches this duty, and who permits an unlicensed driver to drive the vehicle, may be found to have constructive knowledge of the hiree's incompetence to drive for purposes of a negligent hiring claim*

We are not aware of any authority, and neither party has cited any, that addresses whether a person who hires another to drive a vehicle under the hirer's control has a duty to make a reasonable effort or inquiry to determine whether the hiree has a valid driver's license. (See § 14606, subd. (a) ["A person shall not employ, hire, knowingly permit, or authorize any person to drive a motor vehicle owned by him or her or under his or her control upon the highways unless that person is licensed for the appropriate class of vehicle to be driven"]; cf. § 14604, subd. (a) [mandating that an owner of a vehicle make a "reasonable effort or inquiry" into whether the prospective driver possesses a valid driver's license].)[39] Nor are we aware of any authority involving whether a hirer who breaches that duty, and who permits an unlicensed driver to drive the vehicle, may be found to have constructive knowledge of the hiree's incompetence to drive for purposes of a negligent hiring claim.

---

[39] We are aware that section 14604 applies, by its terms, to *owners*, and Beesley did not own the vehicle in question. However, Beesley did *hire* Wells, and section 14606 prohibits the hiring of a person to drive a vehicle when the hiree lacks a driver's license, *irrespective of whether the hirer has knowledge of the hiree's lack of a driver's license*. Thus, and for reasons we explain in more detail in the text, in defining the scope of common law duties with reference to the statutory scheme, we conclude that, *at a minimum*, given that the Legislature required *owners* to make a "reasonable effort or inquiry" (§ 14604) into whether a permissive driver has a driver's license, *hirers* have such a duty of inquiry, as well.

35

As we explain below, *Dodge Center*, the principal case that *Beesley* and the trial court relied on, was never authority as to a *hirer's* duty under section 14606, and *Dodge Center* was based on case law that is no longer controlling in the wake of the enactment of section 14604, subdivision (a). First, *Dodge Center* considered *only* whether a *seller* of motor vehicles could be liable pursuant to common or statutory law[40] in light of the portion of section 14606, subdivision (a) that prohibits a person from *knowingly* permitting another to drive a vehicle without a driver's license. (*Dodge Center, supra*, 199 Cal.App.3d at p. 338.) The *Dodge Center* court *did not consider* the applicability of section 14606, subdivision (a) to one who "*employ[s] [or] hire[s]*" a person to drive. (*Ibid.*, italics added; see *Dodge Center, supra*, at p. 338.) Indeed, the *Dodge Center* court did not mention the "employ, hire" text of section 14606, subdivision (a); the court instead repeatedly referred to the requirement that the defendant have "knowingly" entrusted a vehicle to an unlicensed driver, a requirement that the Legislature did *not* apply to those who "employ" or "hire" a driver. For example, the *Dodge Center* court stated:

> "[S]ection 14606, subdivision (a) in *relevant part* provides that no person shall '*knowingly* permit or authorize the driving of a motor vehicle, owned by him or under his control, upon the highways by any person unless the person is then licensed for the appropriate class of vehicle to be driven.' This statute (and its predecessors) make a motor vehicle owner who *knowingly* entrusts his vehicle to an unlicensed driver liable for a third party's injuries caused by the driver's negligence." (*Dodge Center, supra*, at p. 338, italics added.)

---

40    The *Dodge Center* court stated that a cause of action pursuant to section 14606 "parallels that at common law for negligent entrustment." (*Dodge Center, supra*, 199 Cal.App.3d at p. 338.)

Second, *Dodge Center* lacks persuasive force because the court relied on case law requiring that a person have *actual* knowledge of a prospective driver's lack of a driver's licensure that *predated* the enactment of section 14604, subdivision (a). (See *Dodge Center, supra*, 199 Cal.App.3d at p. 338 ["the common law cause of action for entrustment, requires a showing of knowledge of the incapacitating condition, which under the statute[41] is lack of a license. In the absence of such knowledge there is *no duty to inquire*" (italics added)].) We concluded in part III.C, *ante*, that, in light of the enactment of a "duty of inquiry" (*Smith, supra*, 97 Cal.App.4th at p. 565) in section 14604, subdivision (a), a jury may find the constructive knowledge element of a negligent entrustment claim against an *owner* to be proven *without* proof that the owner had actual knowledge of a prospective driver's license status, in light of the owner's duty to inquire into the license status.[42]

Indeed, the *Dodge Center* court suggested the significance of a statute imposing such a duty:

> "As Dodge points out, the Legislature could readily have imposed a duty of inquiry upon motor vehicle sellers, as it did, for example, upon those who rent motor vehicles, in section 14608. Sections 14606 and 14608 were enacted during the same legislative session as part of the same statute. [Citation.] Since that time, section 14606 has been amended three times, but no language has been

---

41 The *Dodge Center* court was referring to section 14606, subdivision (a). However, as noted in the text, the *Dodge Center* court did not consider the applicability of section 14606, subdivision (a) to one who "employ[s] [or] hire[s]." (*Ibid.*)

42 As we explained in part III.C, *ante*, a jury may reasonably find that an owner of a vehicle had constructive knowledge that a prospective driver was incompetent or unfit to drive if there is evidence from which the jury could reasonably find that the owner breached its duty under section 14604 and allowed an unlicensed driver to drive its vehicle.

37

inserted requiring a seller to examine the purchaser's license. [Citations.]" (*Dodge Center, supra*, 199 Cal.App.3d at p. 342.)

As discussed in part III.C, *ante*, six years after *Dodge Center* was decided, with the enactment of section 14604, subdivision (a), the Legislature *has* imposed a "duty of inquiry" (*Smith, supra*, 97 Cal.App.4th at p. 565) on the *owner* of a vehicle who allows another person to drive the owner's vehicle.[43]

In considering a hirer's common law duties in this context, we observe that section 14606, subdivision (a)'s prohibition[44] on "hir[ing] . . . any person to drive a motor vehicle owned by him or her or under his or her control upon the highways unless that person is licensed for the appropriate class of vehicle to be driven," *contains no requirement* that those who "employ" or "hire" another (*ibid.*) have *knowledge* of the fact that the hiree does not possess a valid driver's license. Rather, section 14606, subdivision (a) prohibits, without qualification, hiring a person who lacks an appropriate driver's license. (*Ibid.* ["A person shall not employ, *hire*, knowingly permit, or authorize any person to drive a motor vehicle owned by him or her or under his or her control upon the highways unless that person is licensed for the appropriate class of vehicle to be driven" (italics added)].) Thus, a textual argument can be made that section 14606, subdivision (a) permits a plaintiff

---

[43] We have no occasion to consider, and do not consider, the duty of a *seller* of a motor vehicle, if any, to inquire into the licensee status of a purchaser of a motor vehicle, in light of the enactment of section 14604, subdivision (a).

[44] While section 14606 is a criminal statute, the violation of which is an infraction (see § 40000.1), we conclude that the statute is highly relevant in determining the scope of common law tort liability for negligent hiring in this context. (See pt. III.B.2, *ante*.)

bringing a negligent hiring claim to establish that a hirer "knew or should have known [(A)] that [the hiree] was unfit or incompetent [to drive and (B)] that this unfitness or incompetence created a particular risk to others" (CACI No. 426) simply upon proof that the hiree lacked an appropriate driver's license.

However, we need not reach such a broad holding to decide this case. Instead, we need consider only whether McKenna is correct in arguing that the "requisite 'amount of care,' . . . pertaining to constructive knowledge of unlicensed driving," as to *hirers* (see § 14606, subd. (a)) is, at a minimum, "co-extensive" with that pertaining to *owners* (see § 14604, subd. (a)). We can think of no reason, and Beesley offers none, why a *hirer* who hires another to drive a vehicle has *no* duty to make a reasonable effort or inquiry into whether a prospective hiree is licensed before entrusting the hiree with a vehicle, given that an *owner* must make a reasonable effort or inquiry before permitting a person to driver the owner's car.[45]  Instead, we agree with McKenna that a person "hiring a worker and entrusting a . . . vehicle to that worker is . . . analogous to the statutory framework governing owners who

_____

[45]     Beesley does contend that, because the text of section 14604, subdivision (a) refers solely to an *owner*, we should reject McKenna's argument that a hirer's "duty should be 'co-extensive' " with an owner's. Beesley contends that we should reject McKenna's argument because, according to Beesley, that "is not what the Legislature determined."  We are unpersuaded.  As noted in the previous paragraph, the text of section 14606, subdivision (a) does not contain *any* knowledge requirement with respect to those who "hire . . . [a] person to drive a motor vehicle."  Thus, the text of the two statutes (§§ 14604, subd. (a), 14606, subd. (a)) does not support the conclusion that the Legislature intended for a hirer of a driver to be subject to a *less* onerous duty of inquiry than an owner who allows another to drive its vehicle.  As explained in the text, a hirer has, at a minimum, a duty to make a reasonable effort or inquiry into whether a hiree with whom they are entrusting a vehicle has a license, whether or not the hiree owns the vehicle entrusted.

39

lend their vehicles to another person." Thus, we conclude that a hirer has, at a minimum, a duty to make a "reasonable effort or inquiry" (§ 14604, subd. (a)) into whether the hiree, entrusted with a vehicle, has an appropriate driver's license.

Finally, for the same reasons we concluded that a jury may find the constructive knowledge element of a cause of action for negligent *entrustment* proven by evidence that an owner allowed an unlicensed driver to drive the owner's vehicle without making a reasonable effort or inquiry whether the person has a valid *license* (see pt. III.C, *ante*), we conclude that a jury may find the constructive knowledge element of a cause of action for negligent *hiring* of a driver proven by evidence that a hirer entrusted a vehicle to a hiree and: (1) the hirer did not make any "reasonable effort or inquiry" (§ 14604, subd. (a)) into whether the hiree had an appropriate driver's license and; (2) the hiree in fact lacked an appropriate driver's license.[46]

For the reasons discussed in the following section, we conclude that there is such evidence in this case.

3. *The trial court erred in granting judgment as a matter of law in favor of Beesley on McKenna's negligent hiring claim on the ground that McKenna would be unable to establish the constructive knowledge element of his claim*

A reasonable jury could find that Beesley[47] did not make a reasonable effort or inquiry into whether Wells had an appropriate driver's license, based

---

[46] As noted in part I, *ante,* both negligent entrustment of a motor vehicle and negligent hiring of a driver are based on evidence of "[a]wareness [by the defendant], constructive or actual, that a person is unfit or incompetent to drive." (*Diaz, supra*, 51 Cal.4th at p. 1157.)

[47] Beesley states in his brief, "it is undisputed that Mr. Beesley did hire Mr. Wells to perform handyman work at the Beesley residence . . . ." As noted in part II.C, *ante*, Beesley assumed for purposes of his motion for

on the evidence discussed in part III.C.2, *ante*, concerning Beesley's permitting Wells to drive the Smoothreads vehicle without asking Wells whether he had a valid driver's license.  Beesley's argument that "[t]here was no reason for Mr. Beesley to suspect that a 57-year old man, who had come to do work driving his own vehicle, would be unlicensed, or otherwise unfit to operate a pickup truck," is unpersuasive because, as we explained in rejecting Smoothreads's similar argument, a hirer must make a reasonable effort or inquiry into the prospective driver's license status, irrespective of whether the hirer "ha[s] . . . reason to suspect,"  that the hiree is unlicensed.  As to the second requirement, it is undisputed that Wells did not have a driver's license at the time of the accident.

Accordingly, we conclude that the jury could reasonably find that Beesley had constructive knowledge that Wells was incompetent or unfit to drive and that Beesley allowed an unlicensed driver to drive a vehicle.  We therefore conclude that the trial court erred in granting judgment as a matter of law in favor of Beesley on McKenna's negligent hiring claim on the ground that McKenna would be unable to establish the constructive knowledge element of his claim.[48]

---

summary judgment that Beesley gave Wells permission to use the vehicle involved in the accident and that Wells was the operator at the time of the accident.

[48]     McKenna and Beesley also both make arguments pertaining to a separate element of McKenna's negligent hiring cause of action, i.e., whether Beesley's negligence in hiring Wells was a substantial factor in causing McKenna's harm.  For example, Beesley argues, that "there must also be some relationship between the employment and the negligent act for a claim of negligent hiring," and contends that the fact that the accident occurred outside of Wells's scope of employment demonstrates a lack of such evidence.  McKenna claims that a negligent hiring cause of action may be brought against a hirer even where the hiree was acting outside of their scope of

IV.

DISPOSITION

The February 28, 2020 judgment in favor of Smoothreads and the September 6, 2019 order granting Smoothreads's motion for summary adjudication are reversed.  Smoothreads shall bear costs on appeal with respect to McKenna's appeal from the February 28, 2020 judgment.

The October 30, 2019 judgment in favor of Beesley and the September 6, 2019 order granting Beesley's motion for summary judgment are reversed. Beesley shall bear costs on appeal with respect to McKenna's appeal from the October 30, 2019 judgment.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

---

employment.  (Citing *J.W. v. Watchtower Bible & Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1164–1165.)

While Beesley raised a scope of employment argument in his motion for summary judgment, that argument was directed toward defeating Beesley's potential "respondeat superior liability," a form of *vicarious* liability not presented by McKenna on appeal.  (See *J.W. v. Watchtower Bible & Tract Society of New York, Inc., supra*, at p. 1164 [distinguishing "direct liability" for negligent hiring from "respondeat superior," a form of vicarious liability].)  Beesley did *not* move for summary judgment on the ground that McKenna would not be able to prove the proximate cause element of his negligent hiring cause of action, and the trial court granted Beesley's motion for summary judgment solely on the constructive knowledge element, and did not discuss proximate cause in any manner in its ruling.  Thus, we have no occasion to consider the parties' contentions as to the proximate cause element of McKenna's negligent hiring cause of action.